Birdseye *v.* Frost.

———————•••———————

## BIRDSEYE *vs* FROST.

To prevent a recovery for a breach of warranty upon the sale of property, on the ground that the defects existed, and were visible, at the time of the sale, it must be shown that the defects were such as could be discerned by an ordinary observer examining the property with the view of trading for it, and were such as not to require skill to detect them.

Where, on the trial of such an action in a justice's court, the question whether the defects complained of were visible at the time of the trade, so as to take them out of the operation of the warranty, is before the justice, and is passed upon by him, his finding is conclusive.

The question whether the defects were visible, and therefore not reached by the warranty, is not one of law merely, but is, *it seems,* a mixed question of law and fact; and is therefore, so far as the fact is involved, within the rule that forbids the reversal of the judgment of a justice, rendered on conflicting evidence.

THIS action was for a breach of warranty upon the sale of a span of horses. It was brought before L. Wells, a justice of the peace of Onondaga county. The complaint alleged that the defendant warranted that the horses were *sound and right every way,* except that one had a blemish on his nose and the other was a stallion; but that they were not sound, and were ringboned and had the heaves. The answer denied each allegation in the complaint. The cause was tried on the 14th of July, 1858, before the justice, without a jury, and on the 17th of July he rendered a judgment in favor of the appellant for $70 damages, and $2.54 costs. From this

Birdseye v. Frost.

judgment the defendant appealed to the county court of Onondaga county, and that court reversed the same, with costs. The decision of the county court was put upon the ground that the evidence showed that the defect, of the ring-bone, was visible to the eye, and therefore a general warranty would not apply to the defect.

From the decision of the county court the plaintiff appeal-ed to this court.

*L. Birdseye,* for the appellant. I. There was an *express warranty* entered into by the defendant. The justice has so found upon testimony which was conflicting. His finding cannot be disturbed upon appeal. (*Pozzoni* v. *Henderson,* 2 *E. D. Smith,* 146. *Biglow* v. *Sanders,* 22 *Barb.* 147. *Wiley* v. *Slater, Id.* 506. *Cook* v. *Moseley,* 13 *Wend.* 277. *And the authorities cited in these several cases.*)

II. The justice also found that the warranty of *soundness* was *broken,* and that the plaintiff was entitled to recover the damages he sustained thereby. The finding and decision up-on this point is abundantly sustained by the evidence, and cannot be reviewed upon appeal. (*See same cases.*)

III. There was evidence sufficient to warrant the justice in finding that one of the horses had the *heaves* at the time of the sale. The plaintiff discovered them in less than a week after the sale. Another witness (Coulter) thought he discovered them *on the day of the sale.* The disease cer-tainly exhibited itself so soon after the sale, and in so mark-ed a manner, as to warrant the justice in finding, as a fact, that it actually existed *at the time the bargain was made.* And this court must intend that the justice so found.

IV. It cannot be claimed that this disease was so plainly visible and patent as not to be covered by the warranty. It will not be pretended that any decided case, or other legal authority exists, showing *the heaves* in a horse to be in all cases a visible and patent defect. Proof was required to show that they were so in this case. No such proof exists here.

Birdseye *v.* Frost.

The defendant swears, " I did not know that either of the horses had the heaves before the sale ; had seen no indication of it." The plaintiff did not discover them till four or five days after the sale. And the strongest proof on this point is that the disease could be detected at the time of the sale, in riding after the diseased horse, or by hearing him breathe, (that is, doubtless, by one skilled in horses, or familiar with their diseases, by listening closely or attentively to his breathing, after he had been driven.) It therefore does not appear that the disease was sufficiently marked, or had progressed far enough to be visible to the eye, or discernible by the ear, *until the horse had been driven.* Hence it was *a latent defect,* which the purchaser could not discover upon a bare inspection ; and it would be covered by the warranty of soundness. For aught that appears upon the justice's return, his judgment may have been based on an actual finding, as a matter of fact, that one of the horses had the " *heaves*" *at the time of the sale,* and that the warranty was thereby broken, and that the damages awarded by the judgment were the result of that breach. As the proof abundantly justifies such finding, the judgment was erroneously reversed.

V. The county judge reversed the judgment solely because, *in his judgment,* the whole evidence showed that the defect of the *ringbones* alone was visible to the eye, and therefore a general warranty would not apply to such a defect. The reversal was erroneous. For it was the province of the *justice* in the court below to decide whether the defect was or was not plainly visible. The judgment as rendered includes a finding that it was not so. There was evidence on both sides of this question. The plaintiff says he did not discover the defects till they were pointed out to him. According to the authorities cited under point I. this finding could not be disturbed on appeal. The case then becomes precisely like that of *Butterfield* v. *Burroughs,* (1 *Salk.* 211. *And see this case as cited in Comyn's Dig,* 238, *tit. Action upon the Case for a Deceit, A* 11; *also in* 3 *Black. Com.* 165, *book* 3,

*chap.* 9, *sub. fin.; and in* 2 *Phil. Ev.* 104 ; *and in Chit. on Cont.* 456, 6*th Am. ed.*)   In that case the warranty was that the horse was *sound ;* whereas he had but one eye.   Verdict for plaintiff.   In arrest of judgment, it was objected that the want of an eye is a visible thing, whereas the warranty extends only to secret infirmities.   It was held that the warranty was broken, if the malady *by possibility was not visible.*   For perhaps it was not discerned, and it shall be intended that it was not, after a verdict for the plaintiff. And see *Margetson* v *Wright,* (8 *Bing.* 454 ; 1 *Moore & S.* 622, *S. C.;) also S. C. at first trial,* (7 *Bing.* 603 ; 5 *M. & P.* 606, *S. C.;) also Liddard* v. *Kain,* (2 *Bing.* 183 ; 9 *Moore,* 356, *S. C.;) Shepherd* v. *Kain,* (5 *B. & Ald.* 240.)

VI.   In other words, wherever the defects, though they seem to be plainly visible to the purchaser, are yet such that their discernment is a *matter of skill,* there the purchaser has a right to rely upon the warranty, and the action will lie. (*See* 2 *Steph. N. P.* 1290, *tit. Deceit ;* 1 *Vin. Abr.* 580, *tits. Actions, Case, Deceit, pl.* 14; *Chit. on Cont.* 456, 6*th Am. ed.;* 2 *Phil. Ev.* 104, *note b; Pars. Mer. Law,* 57 ; 1 *Par. on Cont.* 459, *note i;* 1 *Com. Dig.* 238, *tit. Action on Case for Deceit, A* 11, *pl.* 18, *and E* 4, *and note a; Cowen's Tr.* 4*th ed.* § 253.)   In this case it is obvious that skill and familiarity with the treatment and use of horses was required, to enable the purchaser to detect the presence of ringbones. It is not every swelling on the limbs of a horse that is evidence of ringbones.   Doolett says : " A detector of ringbones might see them across this room."   " They were not large." And Coulter did not discover any ringbone when he went with plaintiff to Frost's house, a few days before the sale. The other disease, the *heaves,* was certainly to be discovered only by skill, and by a careful watching for its symptoms after the horse had been driven.

VII.   The error of reversing the judgment of the justice on the ground taken by the county judge, becomes palpable when the precise terms of the rule of law in regard to except-

Birdseye *v.* Frost.

ing visible defects from a general warranty are adverted to. All the authorities make the *senses of the purchaser* the test whether the defect be or be not plainly visible. And many make the fact whether he did or did not actually know of the defect at the time of the sale, the criterion. In every case put, the defect instanced is not merely visible, but palpable; one that *cannot escape notice.* Thus in 2 *Chitty's Pl.* 280, *note g, tit. Declarations on Warranties,* 7*th Amer. ed.,* the rule is thus stated : "A general warranty will not extend to guard against defects that are *plain and obvious to the senses of the purchaser ;* as if a horse be warranted *perfect,* and wants a *tail or an ear.*" "A general warranty does not extend to defects *which are known to the purchaser,* or which are open to inspection and observation, *unless the purchaser is at the time unable to discover them readily, and relies rather upon the knowledge and warranty of the seller.*" (*Parson's Merc. Law,* 57. And see *Dyer* v. *Hargrave,* 10 *Vesey, jun.* 506, 7; *Schuyler* v. *Russ,* 2 *Caines,* 202; 7 *Dane's Abr.* 562, *ch.* 225, *art.* 11, § 1; 2 *Kent's Com.* 484, 8*th ed. ; and see the other authorities cited under* 8*th point.*)

VIII. But the decision of the county judge is directly opposed to a uniform current of authorities. It has been held from the earliest times to the present, that if the purchaser was blind, he was at liberty to avail himself of the general warranty, however palpable the defect might be to others. Thus, in 3 *Black. Com.* 165, "A general warranty will not extend to guard against defects that are plainly and obviously the object of one's senses; as if a horse be warranted perfect, and wants either a tail or an ear; *unless the buyer in this case be blind.*" To the same point is 1 *Selwyn's Nisi Prius, by Wheaton,* 536, *note b,* 4*th Am. ed., p.* 645, *note b, in* 7*th Lon. ed. ; also* 2 *Starkie's Ev.* 905, *tit. Warranty, Breach,* 5*th Phila. ed.* 1834; *and* 15 *Peterdorf's Ab.* 374, *tit. Warranty, note b.*) So, in *Story on Sales,* § 354, "A general warranty is not understood to ex-

tend to patent defects which are *apparent upon careless inspection,* or to defects which are *at the time known to the buyer.* If, however, the vendee did actually neglect to examine, and were unaware of the defect, *or were physically unable to perceive it from blindness,* the seller would be bound to the full exent of his warranty, although the defect were patent." To the same effect is *Story on Cont.* § 830, *2d ed.* The authorities cited by Story for these positions fully sustain them. They are, *Butterfield* v. *Burroughs,* 1 *Salk.* 211, 3 *Bl. Com.* 165, *Viner's Abr.* and *Bro. Abr., Deceit, pt.* 2, *citing* 11 *E.* 4, 6. In the *Year Book, part* 9, *Anno* 11 *Edward* 4, *fol.* 6 *b, case* 10, *title Deceit, (sub fin.)* Brian, J. says, in perhaps the earliest case establishing the exception to a general warranty where the defect is patent, " If he that bought in that case had been blind, he would have had the action of deceit." To the same effect is *Brooke's Abr. fol.* 233, *title Deceit, pt.* 29, citing the Year Book, as above. Also 1 *Viner's Abr.* 580, *tits. Actions, Case, Deceit, Z b, pl.* 15, *and A c, pl.* 7. In the latter place, it is said; " if the vendee be blind, deceit lies," for a breach of an express warranty, by an obvious and patent defect. 2 *Dane's Abr.* 543, *ch.* 62, *art.* 1, § 15: " An express warranty does not extend to visible defects; as the want of an ear of a horse; *otherwise, if the buyer be blind."* And see 7 *Dane's Abr.* 562, *ch.* 225, *art.* 11, § 1, where the right to sue for a breach of a general warranty by reason of visible defects, is said to depend upon whether " *the buyer, when he agrees, knows the defects."* So, in 7 *Petersd. Abr.* 540, *tit. Deceit B, note,* " A warranty will not be binding where the *deception is apparent, or the falsehood of it known to the vendee;* as if a man warrant a horse with an obvious and visible defect to be sound, or cloth that is blue to be black, *if the vendee was capable of seeing."* And 15 *id.* 374, *tit. Warranty* 6, *note,* has the same exception, of the blindness of the vendee.

IX. For the reasons stated in points VII. and VIII., the question objected to, as to the defect in the plaintiff's eye-

Birdseye *v.* Frost.

sight, was properly allowed. The proof was material and competent, as giving him a right to recover, where possibly he might not otherwise have had it.

X. In answer to the Points for the defendant in the county court, it is submitted that the proof on the subject of damages was competent, and was properly allowed. (1.) The objection in each case was general, that the proof was incompetent and improper. Not to the form of the question or answer; but that *any proof* of damage was incompetent. (2.) For the reasons stated in the previous points, this objection was untenable, and was properly overruled. (3.) If any other objection to this proof existed, it was waived by the objection on untenable grounds, and by the failure to state the true grounds. (*Dunham* v. *Simmons*, 3 *Hill*, 609, *and cases cited.*) But (4.) All the questions on the subject of damages were correct in form and substance. They in substance asked for the difference between the value of the horses at the time of the sale, considering them as sound as regards the heaves and ringbones, and their value with the defects complained of, which is the true measure of damages. (*Cary* v. *Gruman*, 4 *Hill*, 625. *Whitney* v. *Allaire*, 1 *Coms.* 312.) (5.) If it be said that the questions relate to the time of the *trial*, and not of the *sale*, that objection should have been made distinctly at the trial. It could and would have been corrected at once, if made. To reverse for that ground would indeed be to "open the door for trickery, unbecoming and disgraceful in the administration of justice." (*Per Cowen, J.* 3 *Hill*, 611.) But the reference is fairly to the time of the sale. There was an interval of only five or six weeks between the sale and trial; and it cannot be claimed that any material change in the value of the horses had taken place during that time. Doubtless every person at the trial understood the proof to relate to the time of the sale, and not to that of the trial. (6.) Ellis' "competency to speak of damages," was expressly admitted by defendant. And the general objection of incompetency was immediately renewed. In

the county court it was objected that he did not see the horses at or about the time of the sale. It does appear that he lived only a mile and a half from the defendant, and had known the team for a year, and one of them from a colt. And it does not appear but what he did see the horses on the day of the sale, or very near it. (7.) And so of Doolett. He knew of the ringbones, before the sale. And though he may not have seen the horses on the day of the sale, it was in fact admitted by defendant that he too was, from knowledge of the horses, competent to speak of damages. Otherwise a motion would have been made to strike out his testimony, after cross-examination. He had seen them two days before the sale.

*Sedgwick, Andrews & Kennedy,* for the respondent. I. The proof leaves it extremely doubtful if there was any warranty; since both the defendant and Henry Frost testify that each took the property at his own risk; and the plaintiff is the only witness testifying to a warranty. But assuming that the judgment of the justice is conclusive on that point, then the warranty being general, did not cover visible defects. That the defects complained of, so far as the ringbone is concerned, are open and visible.

II. The question put to the plaintiff, "Have you a defect in your eyesight," was improper, and the objection to it was well taken. (1.) The object and effect of the evidence was to extend the legal effect of the contract made, and thereby change a general into a special warranty, against a visible defect. (2.) Its object and effect was to give the plaintiff the benefit of a contract he did not make. (3.) There is no evidence that the defendant had any knowledge of these defects in the plaintiff's eyesight, or that he had a right to suppose he was making an agreement with the plaintiff, to be construed differently from like contracts he might make with other men.

III. There is no evidence that the sorrel horse had the heaves at the time of the alleged warranty. The trade was

made on Monday. The plaintiff thought he first discovered the heaves the Saturday after. This is the first time the heaves are discovered by any one. The defendant says, " I did not know that either of the horses had the heaves, upon the sale." Ezra Goodrich says, " I examined horses about the time of the trade, neither of them had the heaves." A warranty is confined to defects existing at the time of sale. The question then put to the witness Coulter, " How much less are these horses worth for having ringbones, and the sorrel one having the heaves," was improper, and the objection should have been sustained.

*By the Court,* MULLIN, J. The justice having found, upon conflicting evidence, that the defendant made the warranty charged in the complaint, and the amount of damages the plaintiff sustained by the breach of such warranty, these questions cannot be reviewed by us upon this appeal.

The only question before us is, whether upon the evidence there was a breach of the warranty, for which the plaintiff was entitled to recover; in other words, whether the warranty applied to the defects which it was proved the horses sold to the plaintiff had, at the time of such sale. It is not pretended by the defendant but that the horses had ringbones on their legs, but he insists that they were so plain to be seen that the plaintiff must have seen them, and hence that his warranty of soundness did not apply to them. If the defects were thus visible, the law is that a general warranty of soundness does not reach them. (*Chit. on Cont.* 456; *Pars. on Cont.* 459, *note i.*) The first question then is one of fact; were the ringbones visible to an ordinary observer?

The plaintiff says that after the trial, and after the defects were pointed out to him, he saw them. He discovered on the sorrel horse a bunch above the hoof, on each forward hoof, on the forward part of the ankle. The roan horse had a *large* bunch on his fore foot, in the same place. This discovery, he says, was made in about an hour after the trade.

Coulter, who accompanied the plaintiff on the day the plaintiff first went to examine the horses, (which was the Wednesday preceding the Monday on which the trade was completed,) says he saw the horses on the same day of and after the trade; the roan one was lame in one of his legs; above the knee was a scratch, and on the foot a ringbone; on the sorrel horse were bunches on both feet, on the fetlock between the hoof and joint, which had the appearance of ringbones growing. He did not discover ringbones when he first went with the plaintiff. He took up one foot to see if he was flat footed. The horse when brought to witness' house, the day of the trade, limped so it could be seen 50 rods off. He could see those bunches, if looking for them, as far off as the end of the room. Ira Ellis says, one of the horses had ringbones from 6 months old. Henry S. Doolett says, the ringbones are not large; a detector of ringbones might see them across the room. On this evidence, it is quite clear that the ringbones were on the horse's legs, and were visible the day the plaintiff first saw them, as well as the day of the trial. But it is not enough that the defects exist and are visible. They must be such as could be discerned by an ordinary observer examining the animal with the view of trading for it, and such as not to require skill to detect them. (*Chit. on Cont.* 456. *Pars. Merc. Law,* 57. 10 *Vesey,* 507. *Margetson* v. *Wright,* 20 *Eng. C. L. Rep.* 269.) This precise question — whether the defects under consideration were visible at the time of the trade, within the meaning of the authorities cited, so as to take them out of the operation of the warranty — was before the justice, and passed upon by him, and it seems to me his finding must be conclusive. While there is not a conflict of evidence, arising from witnesses swearing to different and conflicting statements of facts or opinions, yet the facts sworn to by the different witnesses might well lead to different and conflicting conclusions. For example, the plaintiff swears that within an hour after the trade, on his attention being called to the defects, he discov-

Birdseye *v.* Frost.

ered a ringbone on one of the horse's legs, which was a *large bunch.* Coulter, on the other hand, testifies that he was acquainted with ringbones, and examined the leg of one of the horses, and he did not discover the ringbone. The justice had before him all the facts before us; he had a much better opportunity to judge of the credibility and intelligence of the witnesses; and having rendered a judgment in favor of a party who has been wronged, either by the reliance which he placed on the defendant's representations, or by an omission to inspect with greater care the condition of the horses, we ought not to disturb it, unless imperiously required to do so by some stringent rule of law.

The county court, in rendering the judgment on the ground that the defects were visible, and therefore not reached by the warranty, treated the question as one of law merely. In this I think the county judge erred. It is probably a mixed question of law and fact; and is, therefore, so far as the fact is involved, within the rule that forbids the reversal of the judgment of a justice rendered on conflicting evidence.

For these reasons, I am of the opinion that the judgment of the county court should be reversed, and that of the justice affirmed.

Judgment reversed.

[ONONDAGA GENERAL TERM, July 3, 1860. *Allen, Mullin* and *Morgan,* Justices.]