HAMILTON *vs.* GANYARD.

Where one agrees to sell and deliver a crop of corn, in " merchantable order," he is bound to deliver sound and ripe corn, and the vendee is not bound to accept any other.

In every executory contract for the future sale and delivery of articles of merchandise, the law will imply an agreement that the property bargained for shall be of merchantable quality.

Where the defendant, by a written contract, agreed to sell and deliver to S. & M. his crop of corn then growing on about thirty acres of ground, to be delivered " in merchantable order," at a specified price; *Held* that he was bound to deliver all the merchantable corn that grew on the thirty acres, and no more.

And the defendant, claiming the right to deliver the whole crop, although three-fourths of it was conceded to have been of unmerchantable quality, having tendered the good and bad together, without proposing or offering to deliver any, except in that way, *it was held* that this was not a proper tender or offer of performance; and that the purchasers were not bound to receive the corn tendered in fulfillment of the agreement, but might treat the contract as broken, and bring their action to recover the damages they had sustained.

*Held, further,* that what the plaintiff was entitled to recover, in such action, as damages, was the difference between the contract price and the market value of the merchantable corn growing on that piece of ground, at the time it should have been delivered, together with the amount advanced, on the contract, and interest thereon.

A PPEAL by the defendant from a judgment entered upon the verdict of a jury. The action was founded upon a contract of the defendant for the sale to Smith & Mathews of his crop of corn of the year 1858. The plaintiff is the assignee of the contract from Smith & Mathews, and sues for damages for the non-delivery of the corn, pursuant to the contract.

The contract was in writing, and is as follows :

" $50. Received from Smith & Mathews fifty dollars on account of my crop of corn, now growing on about thirty acres of ground, to be delivered to them in Rochester, in merchantable order, any time after the first day of January next, and before the first day of May next, at fifty cents

per bushel of sixty pounds.   Dated Rochester, August 26th, 1858.

(Signed)     .     .     ENOS GANYARD."

The defendant, in his answer, alleged a tender and refusal of the corn.

It was proved that the crop of corn which grew upon the thirty acres of land mentioned in the contract, was not well ripened ; that the whole crop amounted to six hundred bushels, of which only about one-fourth was sound and well ripened.   The defendant, in March, 1859, offered to deliver the corn to Smith & Mathews, at Rochester, but they refused to receive it, on the ground that by the terms of the contract the defendant was bound to deliver sound and well ripened corn, and in good order.   Some testimony was given by the plaintiff tending to show that the corn offered to be delivered by the defendant was not in good order, but was wet and dirty.   But the testimony on the part of the defendant clearly proved that the corn was well cured and dry, and in good order.   There was testimony on both sides as to the meaning of the term merchantable order.   Smith, one of the firm of Smith & Mathews, and the only witness for the plaintiffs on that point, testified that by the term merchantable order, is meant clean, sound and dry corn.   Several witnesses on the part of the defendant, and who were dealers in corn, testified that by the term merchantable order, is meant corn which is dry and clean, and that unripe corn, if clean and dry, is in merchantable order.   The judge, however, ruled and decided that by the terms of the contract, the defendant was bound to deliver sound and ripe corn, and the plaintiff was not bound to receive any other.   The plaintiff proved the price of corn to have been, on the first of May, 1859, 75 to 78 cents per bushel.   The jury rendered a verdict of $144.14 in favor of the plaintiff.   The defendant excepted to the rulings of the court, and appealed to the general term from the judgment rendered upon the verdict.

*D. C. Hyde*, for the appellant.

*Angle & Trimmer*, for the respondent.

*By the Court*, JOHNSON, J. The judge was clearly right at the circuit, in his construction of the contract. Corn, to be in " good merchantable order," must be of good merchantable quality. Any other construction would lead to the palpable absurdity of holding an article to be in good merchantable order, which had no merchantable quality belonging to it. One of the principal definitions of the term order is, " proper state." This includes the intrinsic or organic condition of the thing itself, as well as its extrinsic or accidental relations to other things. To say that a person is in good order, is equivalent to saying that he is in a sound and healthy condition. And so, to say of articles bought and sold in market that they are in good order, or in good merchantable order, is to affirm that they are in all respects articles of that character and quality.

But if this were otherwise, and it could be reasonably held that the express stipulations of the contract had reference only to the relative, and not to the inherent, order or condition of the corn, it could make no difference in a case like this. The law clearly would imply an agreement that the corn bargained for was to be of merchantable quality. This is implied in every executory contract for the future sale and delivery of all articles of merchandise. (2 *Kent's Com.* 479, 3*d ed. Cowen's Tr.* 316, 317, 2*d ed. Gallagher* v. *Waring,* 9 *Wend.* 28, *per Nelson, J. Hart* v. *Wright,* 17 *id.* 277, *per Cowen, J.*) In *Sprague* v. *Blake,* (20 *id.* 61,) Cowen, J., at page 64, lays down the same rule. That was the case of an agreement to sell the whole of a certain crop of wheat. By the terms of the agreement the wheat was to be merchantable. But Cowen, J., in his opinion, says, " that is understood of every such contract, even without express terms, while it is executory."

The rule seems to be different, in this state at least, in regard to present sales when there is an opportunity of inspection by the purchaser, or sales by sample.

In any view of the case, therefore, this was, in law, an agreement to sell and deliver all the crop specified, which should come to maturity, so as to be merchantable corn. If the defendant had tendered the merchantable corn, which grew on the thirty acres, he would have fulfilled on his part, and no action could have been maintained against him, for damages merely, whether the quantity turned out to be one hundred or one thousand bushels. He was bound to deliver all the merchantable corn that grew on the thirty acres, and no more. But he claimed the right to deliver the whole crop, three-fourths of which is conceded to have been of unmerchantable quality, tendering the good and bad together, and did not propose, or offer, to deliver any, except in that way. This was clearly no tender or offer of performance, and the purchasers were not bound to receive the corn tendered in fulfillment of the agreement, but might, as they did, treat the contract as broken, and bring their action to recover the damages they had sustained.

It is claimed by the defendant's counsel, that the recovery is for too much, in any aspect of the case. What the plaintiff was entitled to recover, as damages, was the difference between the contract price, and the market value, of the merchantable corn growing on that piece of ground, at the time it should have been delivered, together with the amount advanced on the contract, and interest thereon.

The defendant did not guaranty, by his contract, that the crop should mature, so as to yield any definite number of bushels of merchantable corn, and he is only liable for neglecting or refusing to deliver the portion which proved to be of merchantable quality.

Upon this hypothesis, however, I do not see that the recovery is for any greater sum than is warranted by the evidence. The jury would have been warranted in finding that

the quantity of merchantable corn, from that thirty acres, was at least 300 bushels, and that the difference between the contract, and the market price, was twenty-eight cents. This, together with the amount advanced at the time of entering into the contract, with interest thereon, would, in the aggregate, fall only a trifle short of the amount of the verdict. The jury may have found that something over one-fourth of the crop was merchantable corn, as the evidence was only an estimate of the proportion, and in no respect so certain or exact as to confine the jury specifically to that proportion. The judgment must therefore be affirmed.

MONROE GENERAL TERM, March 4, 1861. *Smith, Knox* and *Johnson,* Justices.]