By the Court.—Speir, J.
The plaintiff delivered to the defendants under the contract all the glass except four thousand nine hundred and twenty-four boxes, and those, which were delivered, arrived on March 10 and 21, May 12, and June 23, in 1873. These were paid for. and examined in a week or two *489 after arrival. The plaintiff’s claim is for the difference between the contract price and the market price of the four thousand nine hundred and twenty-four undelivered boxes of glass. On April 15, 1873, the defendants wrote to the plaintiff to write by the steamer which was to sail the next day, to stop all shipments for them until further notice.
The defense is, that the shipments of the glass delivered by the plaintiff differed in quality from the glass called for by the contract; that the glass called for was known as “approved standard quality,” whereas the glass delivered was a quality below that grade, and, consequently, the defendants were not bound to receive it.
It is to be observed that although the defendants’ answer states that they notified the plaintiff that the glass already delivered was inferior, as claimed by. them, there is no averment that defendants had either refused to receive, or offered to return any part of the glass delivered, or that they were ignorant of its quality at the time of its-receipt.
On the trial, the defendants proved that the glass was examined as it was received, and its quality then discovered, that no objection was then made to receive it, and that no offer had ever been made to return any portion of it to the plaintiff, and that he had never been notified to take back any part. When the defendants wrote to the plaintiff to delay shipments, two of the four shipments had been received and examined, and the request to delay was not put upon the ground of the inferior quality of the glass.
It is not easy to resist the conclusion, from an examination of the evidence, and especially that of the defendant Boyd, that at this time, there being a falling market, that the defendants then had a sufficient supply of glass at the price agreed upon between them. The market continued to fall off, and *490 in the summer of 1873 the defendants claim they notified the plaintiff of their objection to the quality of the glass, and the plaintiff replied it was impossible there should be any difference. Defendants’ 'witness concedes that the plaintiff had never been shown any of the glass.
From the foregoing facts it is plain, 1 think, that the learned judge correctly charged the jury, “that they had nothing to do with the question whether the glass corresponded with the grade called for by the contract between the parties, and that the only question for the jury to determine was the amount of damages.”
The point taken by the defendants’ counsel is, that this was not only an executory contract, but it. was a sale with express warranty as to quality, and the two cases relied upon to sustain his position are Day v. Pool (52 N. Y. 416), and Dounce v. Dow (57 Id. 16). I do not think a warranty can be predicated upon the contract proven in this case. The goods were to be of “approved standard qualities.” When the defendants received the glass (and it was all received before any objection was made to its quality), the defendants themselves, in fact, approved the quality by receiving, examining, and retaining it without an offer to return any part of it, and without notifying the plaintiff to take it back. They have assented to the quality of the glass, and can not now revive that question. The retention of the property by the purchaser is an admission on his part that the contract has been performed. Besides, “approved standard quality’’“is only another expression for a merchantable article. The distinction between this and the cases referred to are very plain. In Dounce v. Dow (57 N. Y. 16), the court say, the contract was not merely for the delivery of iron classified and known as “ XX pipe iron,” and the iron of that designation *491 and name, but that it “ should be of a quality suitable and proper for use in said defendants’ manufacturing business.” Here was an express agreement or warranty that it should be of that designated quality. The defendants, immediately after ascertaining the quality of the iron when delivered, notified the plaintiff of the deficiency in the quality and character of the iron, and requested him to take away the balance which had not been melted and mixed with other iron after the test. The quality of the iron had to be submitted to a test in order to determine its tenacity and toughness, which was particularly valuable in the defendant’s manufacturing business. It was this tenacity, toughness^ and quality of the iron which the plaintiff had expressly warranted and agreed to deliver to the defendants. An attentive examination of the case of Day v. Pool (52 N. Y. 416) will discover, I think, an equally plain distinction. The* cases which bear directly on the question before us are: Reed v. Randall, 29 N. Y. 358; Sprague v. Blake, 20 Wend. 61 ; Hamilton v. Ganyard, 34 Barb. 204 ; Shields v. Pettee, 2 Sandf. S. C. R. 262.
I can not see that the court has committed any error in his charge as to the rule of damages. The contract was made here, and by its terms the glass was to be shipped here. Delivery was to be made by the delivery of the invoices and bills of lading, and that was done here. Payment was to be made in Hew York. The defendants’ witness, Dunham, proved that the usual course of business for a sale of glass was that adopted in this case. The glass is shipped at the risk of the vendee. The court properly left it to the jury to fix the time of the defendants’ refusal to receive the goods, and to determine the market price at the time of refusal. The price was fixed in francs. It was proper that they should take the actual equivalent in currency (The Vaughan and *492 Telegraph, 14 Wall. (U. S.) 268 ; Simpkins v. Low, 54 N. Y. 179, 188.
The judgment should be affirmed with costs.
Sanford, J., concurred.