By the Court.—McAdam, J.
The plaintiff, through a broker, sold to the defendant 169 cases of Prosperi’s Chianti wine, which had just arrived, and was to be delivered on the steamer’s dock. The contract is in writing, in the form of a bought and sold noté, and contains the following provisions : “ All to be delivered in merchantable order. The said goods to be approved by buyer within three days after delivery. Terms, payment by notes, for one-half the amount each at 60 and 90 days respectively.” The goods were delivered, and five days afterwards the defendant gave the notes called for thereby, the first of which was paid at maturity. The present action is on the second note, and the defence is breach of warranty, and a counterclaim of $654.69 over and above the amount of the note sued upon, which is $1,515. The referee adopted ■the defendant’s theory of the case, and gave him *451 a judgment for the ' entire counter-claim, less $30.69. The only warranty alleged is that supposed to be contained in the contract, i. e., that the goods were to be delivered in merchantable order, a phrase which means that at the time of delivery the goods were saleable and fit for market. Web. Dic. ; Hamilton v. Ganyard, 34 Barb. 204; Benjamin on Sales, § 983 ; Notes by Corbin. The defendant was not to be concluded on this subject by the mere delivery, receipt or inspection of the goods, for the contract gave him three days within which to approve or reject them, that is to satisfy himself in any manner he desired, whether the goods were merchantable ■ or not. If he rejected them within the three days there was to be no sale, and if he failed to reject within the specified time, the sale was to become binding. Story on Sales, § 249 ; Benjamin on Sales, § 911; Notes by Corbin. The so-called warranty of quality, did not survive the final approval and acceptance of the goods, and this was the intention of the parties to the contract.
As the contract was made before the defendant had an opportunity to examine the goods it was conditional upon their delivery in merchantable order, and the law would have implied this, if the contract had been silent upon the subject. The defendant upon receiving the goods, whether this condition was expressed or not, was entitled to a reasonable opportunity to inspect them, and if found to be unmerchantable reject them. The evident purpose of the contract was to limit the time to three days, so that unless the goods were sooner rejected, the defendant was to be concluded as to their merchantable character. The time was definitely fixed as . the reasonable period within which the defendant was to ascertain, by tests or otherwise, whether the goods delivered were equal to the description of them given by the contract, in which case the defendant *452 would be bound to accept if they did answer it, whether he was satisfied in other respects or not. Clark v. Rice, 46 Mich. 308. That this was the intention is evident from the phraseology of the contract,. as well as the acts of the parties, viewed in the light of the surrounding circumstances. The plaintiff was not the manufacturer of the goods and presumably only knew of them as any one engaged in selling similar goods might reasonably be expected to know. It will not be inferred, therefore, that he intended to warrant against latent defects of which he had neither knowledge nor notice, in the absence of language clearly indicating that he did so intend. In order to give rise to a warranty, the buyer should not have knowledge of rehibitory defects at the time of the contract. Bennett v. Buchan, 76 N. Y. 386. The examination afforded in this case, was to give the defendant the opportunity of obtaining all the knowledge respecting the merchantable condition of the goods and their rehibitory defects that it is possible for a dealer or persons other than the manufacturer to discover, and this examination was to precede the sale. The term warranty is riot used in the contract, nor is there any positive information or representation as to the quality contained therein. In short, there is nothing but a mere executory agreement to deliver in merchantable order, and that the defendant have three days to determine whether the goods answer that requirement or not. Properly interpreted the various provisions of the contract mean substantially this. The plaintiff was to deliver to the defendant 169 cases of wine, and it was left to the latter to determine within three days whether it was in merchantable order. If he decided it was not, he was at liberty to reject the wine and there was no sale, and if he did not decide that the wine was unmerchantable, within the time specified, the transaction was to be regarded as an executed sale, with an acceptance of the property at the vendee’s risk. The *453 contract fixed the price, mode of delivery and all other details with particularity, and there was but one subject left open, and that was the merchantable character of the wine, which could be rejected, but only on the ground of being unmerchantable. The plaintiff evidently did not mean to leave the question of merchantable order of the goods to the decision of the defendant, and then insure or warrant the correctness of his decision. A vendor may obligate himself in that unbusinesslike manner, but he should riot be held to have done so, except where the intention so to do definitely appears, and it does not so appear in this case. It was not the sale of a commodity in respect to which the vendor possessed any knowledge, which the defendant could not by his examination have readily obtained. The plaintiff and defendant are both merchants and dealers in the commodity, so that neither possessed any advantage over the other in respect to the subject matter of the sale, both stood on the same footing, and the contract indicates that the examination afforded the defendant was to be the crucial test as to whether there was to be a sale or not. The thing sold was not' a patented, complicated or intricate device of which the plaintiff had special knowledge, but an ordinary article of trade, the merchantable character of which is discoverable by familiar tests employed by those engaged in the business, by means of which transactions of like character with “ merchantable condition ” as the basis, are consummated almost daily in this city.
The decision or the question of merchantable order was left wholly to the defendant to be determined in any manner most satisfactory to himself. There was no fraud or concealment on the part of the vendor, and he made no effort to influence the defendant in coming to a conclusion.
Sixty days after the approval of the goods, the defendant voluntarily paid the first note given for half the purchase price, and by the judgment rendered in *454 his favor, he avoids the second note (the one in suit), and recovers back $615 of the amount paid on the first ■ note, and keeps the goods as well. There are cases holding that a warranty of quality, even where the vendee has the option of returning the goods, unay survive their acceptance. While some of the distinctions drawn are narrow, it is nevertheless apparent in those cases from the phraseolgy of the contract, and: the nature of the transaction, that a continuing warranty was intended, and the court simply gave effect to the evident intention of the parties. Day v. Pool, 52 N. Y. 416, cited by the defendant, was the case of an executory contract of sale with an express warranty intended to survive the acceptance of the goods, and is, therefore, inapplicable to the facts disclosed here. In a subsequent case, Dounce v. Dow, 64 N. Y. 411, which is more like this than Day v. Pool [supra], that case was cited and distinguished. The goods delivered here answered the description called for by the contract, and if the defendant wished to guard against any supposed secret or hidden defect or infirmity not discoverable by ordinary examination, he should have obtained an express warranty in respect thereto that might have survived the acceptance of the subj ect matter of the sale. The description of a thing is sometimes an implied warranty that the article delivered shall correspond with the description, but this role is generally applied for the purpose of affording the purchaser. a more enlarged remedy by rescission them he would have on a simple warranty. In Victor v. Stroock, 25 St. Rep., at p. 745, the court even modified this rule by holding that where the vendee examined a particular lot of goods prior to the sale, and the goods delivered were those examined and purchased, it was immaterial by what name they were called, especially where both parties were on an equality having equal skill in the business. There was every opportunity to inspect in this case. Indeed there was no sale until *455 after the defendant had examined the property, and approved of its merchantable condition.
In Reed v. Randall, 29 N. Y. 358, it appeared that the plaintiff sold and agreed to deliver to the defendant a certain crop of tobacco to be delivered “ well cured and boxed and in good condition.” In an action for the purchase money, the defendant contended that the tobacco delivered was not “ well cured and in good condition.” The court held that the terms used in the contract did not constitute a warranty, and that the defence amounted to an allegation of mere noncompliance with the contract declared on.
The court further held that the retention of the property is an admission on the part of the vendee that the contract has been performed, that the vendee cannot accept the delivery of the property under the contract, retain it after having had an opportunity of ascertaining its quality, and recover damages, if it be not of the quality or description called for by the contract. To the same effect are the Dutchess Co. v. Harding, 49 N. Y. 321, and Jones v. McEwan, 16 South Western R. 81. In McCormack v. Sarson, 45 N. Y. 265, it appeared that the defendant purchased all the lumber in the plaintiff’s mills at an agreed price per 1000 feet for the “ prime,” another price for the “ merchantable,” and other price for “ refuse,” and the lumber having been delivered after opportunity for examination, the plaintiffs gave a receipt for so much lumber, describing it as above. The action was for the price, and the defendant offered to prove “ that all the lumber for which the action was brought as prime, and a large portion of that claimed as merchantable, was not prime or merchantable, but only refuse, and of a' vastly inferior quality to prime or merchantable.” The trial judge refused to receive the evidence, and the Court of Appeals, in sustaining the ruling of the trial judge, said : v< The evidence before the court proved that the lum *456 ber had been delivered to and accepted by defendant’s agent as of the qualities claimed. The contract had been executed. The testimony offered did not propose to contradict that. In fact it was entirely in harmony with that evidence. It said virtually : I had an opportunity of examining this lumber; I did examine it, and accepted it as prime, but afterwards I ascertained it was not prime ; I changed my opinion and judgment; the fact was otherwise. This will not do. If he accept it after examination or after an opportunity for examination, as fulfilling the contract, he is bound by such action.” Coplay Iron Co. v. Pope, 108 N. Y. 232, was an action by a manufacturer. There was no collateral warranty or agreement as to the quality of the iron, further than the description of the article which was to be delivered in the future, and the court held that the defendant having accepted the property, without any offer to return, was deprived of any right to make complaint of inferior quality. There was no collateral warranty or agreement here further than that to be inferred from the description of the article to be delivered, and the defendant haying accepted it after full examination is bound to pay for it. The maxim of the common law, caveat emptor, is the general rule applicable to sales, so far as quality is concerned, and the buyer, in the absence of fraud, purchases at his own risk, unless the seller has given an express warranty, or unless a warranty be implied from the nature and circumstances of the sale, and none can be implied here, because the sale was not by the manufacturer, and the buyer purchased after full examination and approval. Even in a sale by the manufacturer, he is liable only for any latent defect in the process of manufacture, but the implied warranty does not extend to a latent defect in the materials used, unless it be proved or can be fairly inferred, that the vendor knew of the defect. Hoe v. Sanborn, 21 N. Y. 552. There was no express warranty by the vendor *457 in this case, and none can be implied which survived the acceptance of the goods. Moses v. Mead, 1 Den. 378. There being no express warranty as to quality, and no fraud, it matters not whether the defects were latent or patent, the defendant accepted the goods in performance of the contract, and has no right to complain now that he made a mistake as to their quality. If the defendant wanted a warranty against latent defects he should have applied' for it, and then the vendor would have decided whether he would assume such an obligation or not. He did not enter into any such undertaking and that ends all controversy concerning it. In Hamilton v. Ganyard, 34 Barb. 204, the contract was to deliver a crop of corn in “ merchantble order,” and the trial judge held (p. 205) that the vendor was obliged to deliver “ sound and ripe corn,” and that the vendee was not bound to receive any other. This ruling was affirmed. The same construction would apply to a contract for apples, peaches or the like, which are not marketable, unless sound and ripe or nearly ripe and having a tendency to ripen after being taken from the tree. That case is cited by the defendant, but contains nothing instructive on the questions involved here. The defendant was under no obligation to accept the plaintiffs goods, if not merchantable, but he passed on this question when he accepted and made them his own. It will not do to approve of goods to obtain possession of them, and disapprove of them afterwards either to avoid paying for them, or for purpose of reclamation. Where an executory contract for the sale of material to be manufactured into articles of merchandise is with warranty of its fitness for the purpose intended, the vendee upon receipt is not bound to apply tests before using; but if defects, not open and visible, are thereafter discovered, which amount to a breach of the warranty, he has his remedy thereon, Dounce v. Dow, 57 N. Y 16, and a vendor who gives such a warranty is sub *458 ject to the same rule, Milburn v. Belloni, 39 N. Y. 53, but no such warranty accompanied the sale of the wine in this case, and, as a necessary sequence, the rules announced in those cases have no application.
' It has been urged that the defect in quality was hidden and buried in the wine, and therefore not discoverable, and that the effect of the examination therefore simply relieved the vendor from defects that were open and visible. Day v. Pool, 52 N. Y. 416; Parks v. Morris Ax. & T. Co., 54 Ib. 586 ; Birdseye v. Frost, 34 Barb. 367. This is undoubtedly the rule applicable to warranty of quality or of fitness where the defects are of a recondite character. There are two reasons why it is not applicable here. First: The objection to the wine; is that it wras not ripe and was bottled before it had effectually gone through the proper process of fermentation, in consequence 6f which it became vinegary and sour. The chemist produced by the defendant made an analysis in July, 1887, of three small samples of the wine, and as a result pointed out the defects stated. He testified that, in his opinion, the germs of secondary fermentation could have been discovered as far back as the date of the contract (April 28th, 1887) by any person accustomed to drinking wine, as it must have been at that time insipid and flat. It is clear, therefore, that even if the defect was occult, it was at once perceivable to the taste of an experienced person, and as tasting is the most common method of testing wines, an examination, with a view to purchase, would at once have disclosed the defect complained of, and if three small samples furnished sufficient to condemn the bulk of the wine in July, 1887, it ought to have furnished enough to condemn it three months before, so it is manifest that the defect was not of the latent character which survives acceptance. But the defendant insists that the wine was not “ripe ” and, therefore, *459 not “ merchantable ” at the time of sale, within the meaning of that term as applied in the corn case, supra. In that case the vendee refused to receive the corn because it was not ripe and sued the vendor for not delivering the commodity he agreed to deliver, and that is what the defendant here might have done, if he exercised the care the vendee in that case did, and such as ordinary business men generally do. The defect required no especial skill or chemical analysis' to detect, for it might have been discovered by any one examining the wine with a view to purchasing it. The defect was imputable to the manufacturer and not to the vendor, but might have been warranted against by him in a manner that would have survived the acceptance, but no such warranty was exacted or given. Second : The so-called warranty is, as the court in Reed v. Randall, supra, and kindred cases, held, nothing more or less than an agreement to deliver a certain commodity. If the vendor undertakes to deliver anything else, the vendee may refuse to accept, and sue the vendor for non-performance of his contract. If, however, the vendee chooses to accept the thing delivered (if there be no fraud, latent defect, or it does not require skill to detect the difference) the vendee has by his acceptance concluded himself by his own act, and cannot thereafter be allowed to make reclamation against the vendor. This seems business like and proper. The defendant did discover from the examination he made that some of the casks were stained with wine marks, and the plaintiff allowed for breakage $23 before the condition of the goods was approved. If the defendant had at the same time discovered the defect now complained of, and he ought to have done so, the plaintiff might have made reclamation on the manufacturer, and some satisfactory deduction to the defendant, and the controversy now going on might have been avoided. Business men must pursue business methods with ordinary care and intelligence, or take the consequences and charge the *460 loss to experience. Under our interpretation of the contract, and the rights and obligations of the parties thereunder, it becomes unnecessary to consider any of the other questions presented on the appeal, for it follows that the judgment must be reversed, the order of reference vacated, and a new trial ordered, with costs to the appellant to abide the event.
Sedgwick, Ch. J., and Freedman, J., concurred.