## LEWIS L. WADSWORTH & others *vs.* PHINEAS E. GAY.

Suffolk. March 22. — June 10, 1875. AMES & ENDICOTT, JJ., absent.

Where goods are sent to a person who is to take and use such parts thereof as he needs for his own purposes, and sell the remainder, an action for goods sold and delivered lies against him after he had taken and used all the goods for his own purposes.

Where goods are consigned to a factor for sale, the consignor may ratify or repudiate at his election a sale of the goods by the factor to himself, and may maintain an action for goods sold and delivered against him as purchaser.

In an action for goods sold and delivered, brought by a consignor against the factor, to whom the goods were sent for sale, and who has purchased them himself, disbursements by the factor for wharfage and storage prior to the sale are to be pleaded in set-off, and cannot be deducted from the price under a general denial.

CONTRACT for goods sold and delivered. The answer contained a general denial, and also alleged that if anything was ever due it was paid, and that the plaintiff made a special contract which he did not keep. Trial in the Superior Court, before *Aldrich*, J., who allowed a bill of exceptions in substance as follows :

The contract was for 4000 railroad spruce ties or sleepers, to be delivered in Boston, at eighteen dollars per thousand. The original contracting parties were Gates & Wentworth, of Calais, Maine, and Manuel & Haynes, of Boston. It was contended by the defendant, but denied by the plaintiffs, that by the terms of the contract the ties were all to have been delivered as early as November, 1870. Before any of the ties were delivered the defendant had acquired the interest and taken the place of Manuel & Haynes in the transaction, so that although the first cargo of ties of about 2000, shipped in November, 1870, was consigned to Manuel & Haynes, the ties were received by the defendant and paid for by him, and at that time he requested that the remaining ties covered by this contract should be consigned to him.

On November 15, 1870, Gates & Wentworth wrote to the defendant that they could not get the ties ready then, but could ship them by the middle of the next month, and requested an answer, by return mail. On December 9, 1870, Gates & Wentworth wrote to the defendant inclosing an invoice of the ties, shipped by the schooner Bob. On December 16, 1870, Manuel & Haynes wrote the following letter to Gates & Wentworth : " Your letter to P. E. Gay of the 9th, inclosing invoice of railroad ties, was received by him, in reply would say that as you did not send them at the time agreed upon we shall not want them now but may in the spring ; by reference to your letters you will see that they were to have been here several weeks ago, and in your letter to Mr. Gay of November 15 you say ' we shall be unable to ship them by the Delia Hind next trip as we cannot get them ready to ship till next month say by the middle, if that will answer your purpose please let us know it, by return mail,' knowing that the time mentioned would be too late for us we did not reply, thinking of course you would wait till you heard from us again before you shipped them."

On December 20, 1870, Gates & Wentworth wrote the following letter to Manuel & Haynes: "We have yours of the 16th. The schooner Bob, which had the railroad ties on board, sprang a leak when near Eastport, and the cargo had to be taken out, and will lay over till early in the spring, when we hope you will be ready for them."

This closed the correspondence between the defendant and Gates & Wentworth. In the mean time the plaintiffs had taken the place of Gates & Wentworth in the transaction, and had in fact provided the ties. And in the spring of 1871 a correspondence between the plaintiffs and defendant commenced and continued at intervals through the year; copies of the letters are in the margin.*

---

* "Calais, Maine, March 30, 1871. Phineas E. Gay, Esq. Sir. We send B of L and specification of some spruce which Messrs. Gates & Wentworth turned over last fall for us to saw for you and which we were obliged to unload last fall, the vessel not proving seaworthy. Our Mr. Kelley, who had the talk with Mr. Gates is away and we find no minute about price; will you please write us what the trade was, and we will make draft for the amount. Yours truly, Wadsworth & Kelley."

"Boston, April 4, 1871. Messrs. Wadsworth & Kelley: Your letter of Mch 30 is received; in reply would say that we shall not want the ties now, as we have got our supply; we wrote Gates & Wentworth Dec. 16 1870 that 'as they did not send the ties at the time agreed upon we shall not want them but may in the spring.' Now when they arrive we may want a portion of them and perhaps can sell them all for you but cannot agree to take them. Resp'y, P. E. G., by E. H."

"Calais, Maine, April 8, 1871. P. E. Gay, Esq., Sir: We are in receipt of yours of the 4th inst. We called upon Mr. Gates this afternoon and he informs us that he called upon you either the first or second Saturday in March and either you or your partner told him to ship the sleepers. Upon his return, he notified us to ship them, and we did so. We got them for him last fall but the vessel we shipped them in met with trouble and we had to take them out. We don't know what we could do with a lot of such spruce in Boston. Yours truly, Wadsworth & Kelley."

"Messrs. Wadsworth & Kelley: Your letter of April 8 is at hand. Mr. Gates must have been under a mistake in saying that any person belonging to our firm told him to have the sleepers shipped to me, he called at the store of my son, he told Mr. Gates that he did not know anything about the matter, but that he would ask me and I would write him if I wanted them. As they are on the way I will do the best I can to sell them, I think I can use a few of them perhaps three or four hundred, I will keep all I can use

It was admitted by the defendant that his son-in-law, Charles E. Brigham, was a partner of his in the business for which the

---

and I have had some inquiry by another party. I will help you out if I can. Truly, Phineas E. Gay."

" Boston, April 23, 1871. Messrs. Wadsworth & Kelley : I have received per schooner Bob, Captain Warnock, 2005 spruce sleepers on consignment which I will do the best I can to sell, and would like to know the lowest price you will sell them. I am at present well supplied, but possibly may take a few of them next month. I paid the freight $185.50, and charged the same to you. Resp'y, P. E. Gay, by E. H.

" P. S. I think the ties will not sell for more than 40 or 42 cents."

" Calais, Maine, April 26, 1871. Phineas E. Gay, Esq. Sir : We notice the schooner Bob has arrived and cleared for home so presume the spruce sleepers' matter was as Mr. Gates instructed us as we have heard nothing from you. Shall we therefore draw upon you for the amount due. Yours truly, Wadsworth & Kelley."

" Boston, April 29, 1871. Messrs. Wadsworth & Kelley : I have your letter of 26th April. I am surprised at its contents, in the first place Gates & Wentworth have no claim on any of us as they did not furnish them in time as ordered, and we countermanded the order last fall before they were shipped or were sawed and we have always told you that we had no use for only a few if any; we were disposed to do what we could to help you out, but if you take the course you indicate and draw for the money, you do it at your peril we shall not pay it. Resp'y, P. E. Gay."

" Boston, May 31, 1871. Wadsworth & Kelley: I shall be obliged to remove the railroad ties, consigned me by you, from the wharf where they were landed, in a few days; and I write for instructions what to do with them, I have not sold any of them yet and fear I shall not be able to sell them at present. Resp'y, P. E. Gay."

" Boston, May 31, 1871. Gates & Wentworth: I have this day notified Wadsworth & Kelley that I shall be obliged to remove in a few days the railroad ties consigned me by them (and which were originally billed by you) to some other wharf, as they cannot remain any longer where they are and I want instruction what to do with them, I doubt if I can sell them at anything like the price invoiced. Resp'y, P. E. Gay."

" Calais, Maine, October 16, 1871. Phineas Gay, Esq., Sir : We have heard nothing from you about the spruce sleepers sent you. When the writer was in Boston your Mr. Brigham promised to write the following day about them perhaps the letter has miscarried. Yours truly. Wadsworth & Kelley."

" Calais, Maine, November 2, 1871. Phineas E. Gay, Dear Sir : We have been waiting to hear from you in relation to the spruce sleepers shipped to you per schooner Bob last spring. It is now nearly one year since we sawed them by order from Messrs. Gates & Wentworth for you. We have followed their instructions in every particular, and can see no reason why we

ties were ordered; and the plaintiffs introduced evidence tending to prove that Brigham, sometime in the spring of 1871, gave to a person representing the plaintiffs an order or direction to have the ties now in suit forwarded at once, and that this order was given before the ties were shipped, as stated in the correspondence between the plaintiffs and the defendant. Evidence contradictory of this was introduced by the defendant, and he moreover contended that in one of his letters, a copy of which is in the

---

should not receive payment for the cargo. We have not called upon them as we have expected that you would in some reasonable time conclude to authorize us to draw on you for the amount, as you have appropriated the property to your use. We supposed you ordered them of Gates & Wentworth as they certainly did from us. And we think they will be bound to pay us if you do not. Will you please inform us as soon as possible what action you will take in the matter, so that we may know what to do. Yours truly, Wadsworth & Kelley.''

" Boston, November 8, 1871. Messrs. Wadsworth & Kelley: Your favor of November 2d is received, and in reply would say that in October 1870 Manuel & Haynes ordered from Gates & Wentworth 3000 spruce railroad ties to be delivered in November, 1870; about 2000 ties were received and paid for, and in the month of March, 1871 you sent us 2005 more ties, notwithstanding we notified Gates & Wentworth that we had obtained a supply elsewhere, & should not take any more of them; when the ties arrived here last March, we notified you that we received them on consignment, had them landed on the wharf, paid the freight, $185.50, and charged the same to you; we have recently had occasion to use some more ties and have taken all but 500 of the consignment; we are now notified to remove them from the wharf as they want the room, when we get the bill for storage & carting, &c., we will make up the acc't, and remit you the am't due. Resp'y. Phineas E. Gay, for M. & Haynes.''

" Calais, Maine, December 8, 1871. Phineas E. Gay, Dear Sir: We have waited patiently for a remittance from you in accordance with your last letter. Please do not delay any longer than you find it necessary. We are suffering in this matter from no fault of ours, as we followed the orders we received exactly, and any am't you send will relieve us just so much. Yours truly, Wadsworth & Kelley.''

" Calais, February 5, 1872. Phineas E. Gay, Esq., Dear Sir: Soon after Mr. Gates returned from Boston early last month he had a conversation with Wadsworth & Kelley in relation to the railroad sleepers shipped to you last spring. They think you ought to pay for them inasmuch as you told Mr Fay, of the firm of Johnsen, Fay & Co., after you paid him for the first shipment, that the next shipment should come or be shipped directly to you as you were interested in the trade. Yours truly, Gates & Wentworth.''

margin, he revoked the order given by Brigham, if any such was given. The plaintiffs contended that the order had been received and acted upon by them, and the ties forwarded before the alleged revocation was sent or received.

The ties named in the declaration arrived in Boston about April 23, 1871. The defendant testified that he at first refused to receive them, but that after two or three days and several interviews with the captain of the schooner, in which they were shipped, he received them upon the terms and conditions stated in the annexed copies of his letters, and that he did not receive them under the contract. He disclaimed having made any contract with the captain of the schooner as to the terms upon which he would receive the ties, even if that person had any authority to make a contract respecting them. He also testified that he paid the freight upon the ties, $185, and procured a place for their storage on Reynolds Wharf; that he afterwards endeavored himself, and through a broker, to sell and dispose of the ties to other parties, but failed to do so; that before November, 1871, he had used, in fulfilling his contract with the city of Boston for filling the Suffolk District and other places, 1500 of the ties, and removed the remaining 500 to a place of his, near Cottage Farm, and afterwards used them also as he had the 1500.

There was no evidence as to when the defendant began to use the ties, except so far as it might be inferred from his testimony that some of them were used on the Suffolk District where the work was in progress before those ties arrived in Boston, and also from his testimony that when his men wanted ties they went to those ties and got them.

As to the employment of a broker to sell the ties, the time when and the efforts made by him to effect the sale, Charles F. Morse, a witness called by the defendant, testified as follows: " I am a lumber dealer. I had some ties put into my hands by Gay on Reynolds Wharf in spring or summer of '71. I had charge of Reynolds Wharf at the time. I knew when those ties were put upon the wharf. Two or three months after they were put into my hands for sale, I tried to sell them but couldn't." On cross-examination he said, " I tried three or four days to sell them. It was in the summer, I had to sell them." The defendant made no definite statement of his own efforts to sell the ties.

In an account rendered to the plaintiffs he made no charge for services or expenses of brokerage or as consignee, unless the expense or disbursements for wharfage, &c., as set forth in one of his answers to interrogatories filed by the plaintiffs, and which is hereafter referred to, are to be construed as such charges. The defendant at the trial offered no evidence of any other disbursements or charges.

At the close of the evidence the plaintiffs contended that the jury would be authorized to find that the defendant received the ties under a contract to pay eighteen dollars per thousand for them, and that the plaintiffs were entitled to recover that sum less the freight; or, if the jury should not find that the ties were received under the contract, that then the plaintiffs would be entitled to recover upon a *quantum meruit* the value of the ties less the freight. The defendant contended that the evidence would not authorize the jury to find the ties were received under the contract, and that the action in the present form could not be maintained.

There was no question raised as to the want of privity of contract between the parties to this suit. The defendant asked the judge to rule: " 1. That the obligation of a consignee for sale is to render an account and pay over the balance due, after deducting disbursements and charges. If the defendant rendered an account, but did not pay over the balance due because the plaintiffs would not accept the same as rendered, the plaintiffs can only recover the balance actually due after deducting all reasonable costs and charges, and no declaration in set-off is necessary. 2. That a declaration for goods sold and delivered cannot be maintained in such a case. 3. That the case is not varied in this respect by the fact, if found, that the defendant, after incurring expenses as consignee, took the goods to himself by consent of the plaintiffs and was to allow in the account what they were reasonably worth. In such a case he is to allow in his consignment account a reasonable price for them, the avails being constructively in his possession, and he having a lien on them and a right to deduct his proper disbursements and charges. 4. That a count for goods sold and delivered cannot be maintained against the defendant as consignee for sale if he discharged his duty and sold the goods, or took them himself, after performing services and

incurring expenses in that capacity, and, with the consent of the plaintiffs that he might do so at any time, accounting for them at a reasonable price. 5. If the jury find that the understanding or agreement was that the defendant took the goods as consignee for sale, with a right to take them himself if he could use them, and that he should in that event account for what they were fairly worth, deducting the expenses and disbursements, then the jury would have a right to hold the plaintiffs to that contract, on the pleadings as they stand. That the measure of damages against a consignee for sale, who has discharged his duty faithfully, is the amount received if sold, or the fair value of the goods, if the consignee bought or took them himself by an understanding that he might do so at a fair value, if he could use them himself, and he took them ultimately under this agreement, deducting his disbursements and expenses, and for services incurred if reasonable and proper. That the freight paid and the disbursements and expenses incurred and due before the defendant so took the goods with a right to so take them himself, constitute a lien on the property, and the value of the property is to be determined as so subject, and the jury have a right to consider them in estimating the damages. That a count for goods sold and delivered cannot be maintained against a consignee who has discharged his duty and sold the goods, or taken them himself after performing services and incurring expenses as consignee, and with the consent of the consignor that he might do so at any time, accounting for them at a reasonable price."

The judge declined to give these several instructions on the ground that however correct as abstract propositions of law they might be, they were not applicable to the evidence and pleadings in this case; and instructed the jury, " That if, upon the evidence, they were satisfied that the ties were forwarded by the plaintiffs and received by the defendant under the contract to pay eighteen dollars per thousand for them less the freight; or if they should find the ties were not forwarded within the time fixed by the contract, yet if they should also find that the defendant received them waiving all objections as to time ; or if they should find an order was given by Brigham to have the ties forwarded under this contract, and that they were so sent while the order remained unrevoked, it would be their duty to return a verdict for the plain-

tiffs for the value of the ties at eighteen dollars per thousand less the freight; and that, failing to find for the plaintiffs on any of the grounds above stated, they would still be authorized to find for the plaintiffs for the value of the ties as proved, at the time the defendant used them in his own business, less the freight. That upon whichever ground the verdict might be found, the freight ought to be deducted, as it was admitted the defendant had paid it, and the plaintiffs conceded it should be deducted from the price or value of the ties delivered in Boston."

The plaintiffs read as a part of their evidence their interrogatories to the defendant, and his answers thereto. Appended to one of his answers was his statement of the amount he had paid for wharfage, &c. The plaintiffs objected to reading this statement for the reason that it was neither responsive to the interrogatory nor pertinent to any issue in the case. The defendant insisted upon the statement being read, and by direction of the judge it was read to the jury; and thereupon the defendant contended that the amount of his disbursements as set forth in that statement should be allowed, although the pleadings contain no declaration in set-off. The judge ruled otherwise, and that the amount should have been claimed in a declaration in set-off, if claimed at all.

The jury returned a verdict for the plaintiffs; and found specially that the disbursements of the defendant for wharfage, &c., as stated in his aforesaid answer, amounted to $179. The defendant alleged exceptions to the foregoing rulings and refusals to rule.

*A. A. Ranney*, for the defendant.

*R. D. Smith & M. M. Weston*, for the plaintiffs.

MORTON, J. This is an action for goods sold and delivered. One of the positions taken by the defendant at the trial was that the goods were consigned to him, and therefore that the action could not be maintained in this form.

There was no evidence which would justify the jury in finding that the goods in question were consigned to the defendant as a factor in the usual course of business. If we take the view of the evidence most favorable to him, it shows that the goods were received by him under an arrangement that he was to take and

use such as he needed for his own purposes, and sell the remain-der as the agent of the plaintiffs.

If such was the arrangement, undoubtedly the goods continued to be the property of the plaintiffs so long as they remained in the defendant's hands unused or undisposed of; and if he had sold them to others, the proper action would be an action to re-cover their proceeds. In neither case could an action for goods sold and delivered be maintained, because there is no transfer to the defendant of the property in the goods, and thus one of the essential elements of a sale is wanting. But it was an undisputed fact in this case that the defendant took and used for his own pur-poses all the goods which were sent to him. He had the option to take the goods himself, and when he exercised this option and appropriated them to his own use, the property in them passed to him, and a completed sale was effected.

He appropriated the goods rightfully under and by virtue of his contract with the plaintiffs, and the proper if not the only remedy for them is an action for goods sold and delivered. But if we adopt the view claimed by the defendant, and treat the case as one where the goods were sent to the defendant as a consignee, and he, acting as factor, sold them to himself, the result is the same.

A consignor may maintain an action in his own name, against a purchaser, for goods sold by a factor. *Barry* v. *Page*, 10 Gray, 398.

A factor cannot properly sell to himself, and, if he attempts to do so, the principal may repudiate the transaction. But he may, if he so elects, treat it as a valid sale, and maintain an action for goods sold against the factor as purchaser.

In any aspect of the case, we are therefore of opinion that the presiding judge correctly ruled that this action could be main-tained, and that the instructions requested by the defendant were not applicable to the facts proved.

The defendant offered evidence tending to show that he had made certain disbursements for wharfage and storage of the goods, and claimed that such disbursements should be deducted from the value of the goods, in this action.

We think the court correctly ruled that this could not be done under the pleadings. In an action for goods sold and delivered

the plaintiffs are entitled to recover the agreed price, or, if no price is agreed, the fair value of the goods. If the defendant has any claim for services rendered or money expended, on account of the goods, his proper remedy is a declaration in set-off. It is essential to the rights of the plaintiffs that they should have notice by the pleadings of any such claim, in order to be prepared to meet it.                        *Exceptions overruled.*