Okey, J.
The record does not purport to contain all the testimony. We must assume, therefore, that the verdict was supported by sufficient evidence, and simply inquire whether there was error in matter of law.
1. Whether Bimm and Herchelrode could have held the ice for Cullen & Co. and recovered the contract price, is a question which we need not determine. Hadly v. Pugh, Wright, 554; Dayton, &c. T. Co. v. Coy, 13 Ohio St. 84, 90; Shawhan v. Van Nest, 25 Ohio St. 490; Benjamin on Sales (2 Am. ed.), § 788, bear upon it. Assuming that there was a breach of the contract on the part of Cullen & Co., Bimm and Herchelrode had at least two remedies, either of which they might pursue. They could treat the property as their own, and if its market value, at the time of the breach, was less than the- contract price, they might by action recover the difference and a sum equal to the interest; or, after notice to Cullen & Go., they could sell the ice, on the theory that the property in,- but not the possession of the ice had passed to them, and if the amount thus realized was less than the contract price, they could by action recover such deficiency and a sum equal to the interest thereon. In the petition a recovery is sought upon the ground that there had been such re-sale and was such deficiency; but it appears the real transaction was a re-sale by Bimm and Herchelrode to themselves at thirty cents per ton. Whether a purchase by an agent or trustee at his own sale is, in the absence of statutory provision, void or only voidable [as to which see Eastern Bank v. Taylor, 41 Ala., 93; Bassett v. Brown, 105 Mass. 551; Wadsworth v. Gay, 118 Mass. 44; Marsh v. Whitmore, 21 Wall. 178; 1 Williams Ex. (6 Am ed.) 719, 720, note], is a question which we need not determine, for Cullen & Cc., upon being informed of such i’e-sale, objected to it, and thereby effectually avoided it. The pleadings, however, are clearly *239 sufficient to warrant a recovery according to the facts, which are, that Bimm and Herchelrode treated and disposed of the ice as their own, and that the market price was less than the contract price on Mai'ch 1, 1873. The fact, x’elied on by Cullen & Co., that, subsequently to March 1, the mai’ket pxice of the ice advanced beyond the contx’act price, is of no importance. Bimm and Hex’chelx’ode wex’e entitled to the benefit of such advance. Bridgeford v. Crocker, 60 N. Y. 627; Hayden v. Demets, 53 N. Y. 426; Quick v. Wheeler, 78 N. Y. 300. Nor can Cullen & Co. maintain the further positions they assume, that by making such re-sale Bimxn and Herchelrode converted the property of Cullen & Co. to their own use, or became their trustees. Objection to such re-sale having been made by Cullen & Co., it became and was wholly invalid; and hence Bimm and Herchelrode wex’e not, and in reason could not be, in any worse position than they would have occupied, if no attempt had been made to re-sell the ice.
2. The contract requix’ed that the ice shoxxld be merchantable. Bxxt the court refused to chai’ge, as requested by Cullen & Co., that “ uxxless the plaintiffs have pi’oved by a fair preponderance of testimony, that all the ice coxxtained in the ice houses of the plaintiffs, at Dayton, and tendered to the defendants, and by thexn refused, was on March 1, 1873, merchantable ice, they cannot l’ecover.” To this refusal, Cullen & Co. excepted. Evidence was offered tending to show that the two top tiers of ice in both houses contained impurities, and were only fit for cooling purposes; but evidence was also offered to show that those tiers ax’e never intended for consxxmption, and that they usually melt befox’e any ice is renxoved from the houses. It also appeared that some other parts of the ice were not wholly free from impurities.
In view of the evidence and the charge given, we think the court properly refused the chai'ge requested. The jury must have found that the top layer and the layer next to it, in each house, was not intended for consumption, and that they melted before Cullen & Co. woxxld have had occasioxx to x’emove any ice from the houses. And the existence of impurities in some other portions of the ice did not necessarily render the lots *240 sold, unmerchantable. In determining whether property like this is merchantable, some regard must be had to quantity. The rule upon the subject may be illustrated by a familiar example. Thus if A sells to B six sound apples, the tender of six apples, one of which is to any extent unsound, may not be a compliance with the contract; but where the sale is of a barrel of sound apples, the tender of a barrel of apples might be a compliance with the contract, although one apjfie in the barrel was to some extent unsound. Large lots of ice entirely free from impurities perhaps cannot be' found. The court said to the jury, the contract, as to the character of the ice, was complied with on the part of Bimm and Herchelrode, if thé ice as a lot was of a merchantable quality, “ fit for the ordinary uses to which ice is put,” and such as would “ fairly pass in market, not alone at Dayton, but everywhere.” This was a proper construction of the contract. Hamilton v. Ganyard, 34 Barb. 204; s. c., 3 Keyes, 45. Indeed, the expression in the contract that the ice must be merchantable, is only what the law would have required in the absence of such express provision. Benjamin on Sales (2 Am. ed.), § 656 ; Leake on Contracts, 407. As the evidence is not set forth, we must assume that the ice was merchantable, within the rule stated by the court.
3. The remaining objection is the alleged error of the court in permitting John W. Herchelrode, son of one of the plaintiffs below, to testify what information he gave to his father, the father having testified that he wrote a certain letter—offered in evidence—on information given to him by his son. In order to determine as to the force of the objection, it will be necessary to set forth certain matters appealing in the record.
On December 4, 1872, the plaintiff Herchelrode wrote to Cullen & Co., at Cincinnati, which was their place of business : “ My son reports the ice six inches thick ... I am told it is not very clean—could not be called merchantable ... I think it will pay you to come up by first train to-morrow, and see the ice and its condition. Mr. Bimm is of the same opinion . . . We may secure the ice on our own account, should you not agree to have it put up in its present.condition.”
On the next day, Cullen & Co. answered: “ Our contract calls for ice not less than six and one half inches, good mer *241 charitable ice. Of course we will want that kind of ice if we can get it.”
On December 16, 1872, Bimm and Iierchelrode wrote to Cullen & Co.: “ We have been cutting ice on Friday and Saturday, and find it to be very nice and clear. We were quite disappointed to find it so clear. It is about nine inches thick... I f you think best to come up and see the quality while we are at work, it may satisfy you much better than our writing___ Wo wTonld like to have your opinion.”
On the trial these letters, among others, were offered in evidence by Bimm and Ilerchelrode. Ilerchelrode then testified that he had no knowledge of the condition of the ice at the time he wrote the letter of December 4, 1872, but obtained the information on which the letter was based from his son, John W. Ilerchelrode, who testified that he knew nothing about the writing of the letter of December 4, except that his father said to him he had written such a letter. No objection was made to the introduction of this evidence, written or verbal. Probably it was not subject to any objection. Watson v. Moore, Car. & K. 626; Roe v. Day, 7 Car. & P. 705 ; Bryant v. Lord, 19 Minn. 396. Bimm and Ilerchelrode then asked John W. Ilerchelrode this question: “ What was the information you gave your father, upon which this letter was written ?” To that question Cullen & Co. objected, but the court overruled the objection, and they excepted. He answered: “ I stated that about fifteen or twenty feet from shore there was dock seed collected; that I supposed the ice was not in good condition. I told him it was six or six and a half inches thick at that time . . . Didn’t suggest to my father to write to Cincinnati.”
It is doubtful whether the reception of this evidence would afford ground of reversal, even if it was not strictly admissible, for it is difficult to see how Cullen & Co. were injured by it. The testimony related, not to the quality of the ice, but to the information which the son had communicated to his father. Herchelrode did write to Cullen & Go. on December 4, 1872, that the ice was not merchantable. How he got his information was unknown to them. They would have been warranted *242 in regarding tlie statement as true ; but twelve days thereafter, Herchelrode informed them that he was mistaken; that the ice was merchantable. In both letters he requested them to come and see for themselves. The material matter for them was, not the information on which the letters were written, but the truth of the statements contained in the letters. But the letters were properly offered in evidence for the purpose of showing that Cullen & Co. had been requested to make an examination of the ice before and during the time that it was taken from the lake; and as the earlier letter contained a statement which Bimm and Herchelrode claimed was inserted therein by mistake, the testimony of the plaintiff Herchelrode was offered to show that in writing the letter he acted solely on in formation x’eceived from his son, and the son was called to show the information really given to his father. This tended to show the mistake, as well as the good faith of Bimm and Herchelrode ; and while the testimony was of no great importance, in view of the questions before the jury, we are not satisfied that its reception affords any ground for reversing the judgment.

Judgment affirmed.