SIMS v. MILLER.

1. FACTORS—BUYING FROM THEMSELVES—ELECTION.—Factors, without in-
struction, sold to themselves cotton of their patron on which they had
made advances, and reported sale and balance to patron's credit, without
disclosing that they themselves were the buyers. The patron at first
declined to accept, but afterwards, the factors insisting, approved the sale.
*Held*, that the right of election by the patron to affirm or repudiate the
sale remained with him until he learned that his factors were themselves
the purchasers; and he might demand payment of the balance reported to
his credit, and insisted upon by the factors as his only right up to the time
of his final agreement to accept.

2. SALE WITHOUT ORDER—AMOUNT OF RECOVERY.—If there was error in
charging that a patron could hold his factors liable for the highest value
of cotton at any time from date of sale to date of demand, where the factors
sold without instructions, it was a harmless error in this case, where the
patron sued to recover only that for which the factors had sold.

3. IBID.—IBID.—SUBSTITUTED GOODS.—In such case the patron could not be

held to the lower market value of the cotton at a subsequent day on which he had given directions to sell, nor be charged with interest or insurance and storage on other cotton which the factors had purchased for the purpose of protecting themselves against the claim of such patron.

Before ALDRICH, J., Richland, October, 1891.

Action by George T. Sims, trading as George T. Sims & Co., against Jasper Miller and others, cotton factors, under the firm name of Miller Brothers, commenced in April, 1891.

*Mr. John P. Thomas, jr.,* for appellants.

*Mr. R. W. Shand,* contra.

October 24, 1892. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. It seems that the defendants were factors, doing a cotton business in Columbia, and that the plaintiffs had cotton in their hands, upon which they had made considerable advances. On January 28, 1891, the defendants reported by letter to the plaintiffs, that they had sold the cotton for $1,592, and enclosed a statement of the account of sales, showing that, after deducting the advances and interest, there remained on January 28, 1891, the sum of $226.65 due to the plaintiffs, and that is the amount for which the plaintiffs brought this action.

There was no formal answer, but, by consent, the defendants were allowed to make a statement, which was substantially as follows: That they had no orders to sell; but, having made advances, in order to save themselves, they took the cotton themselves, allowing the fullest market price for the same; that they charged themselves with the amount, and after deducting therefrom the advancements and interest, reported the result to the plaintiffs, that there was due them a balance of $226.65. The plaintiffs refused to approve the proceeding, and in order to protect themselves, they [defendants] replaced the cotton— that is, put a sufficient quantity in the warehouse for that purpose. On April 6, 1891, the plaintiffs wrote to them, offering to sell, and the defendants replied: "We sent you account of sales of the forty-four bales twice, and you returned them both

times. We now enclose them again, and by these papers you will see that there is a balance to your credit of $226.65." On April 8, the plaintiffs wrote a letter, which was substantially an acceptance of the old statement, January 28, enclosed also in the defendants' letter of two days before, viz., April 6. But on that same day, April 8, the defendants wrote another letter, enclosing a different statement of sales—that is to say, the identical statement (of January) except the deduction of items of account for storage, interest, &c., amounting to $54.08; and that is the whole difference between the parties.

Under Judge Aldrich's charge, the jury found for the plaintiffs the amount originally admitted by the defendants to be due, $226.65.

The defendants appeal to this court, upon the following grounds: I. They except, because the presiding judge erred in charging the jury, that "Where a factor undertakes to buy cotton from himself belonging to his principal, then the man who sends the cotton there has the right to elect whether he will stand by the sale, which is improper, or whether he will demand the value of the goods"—the error consisting in the erroneous application of the law to the case at bar, where the factor was selling to enforce his lien, and took the cotton at the highest market price, and notified the owner of such sale. In such case the plaintiffs had no right of election, unless the factors, Miller Brothers, chose to allow the same. IV. Because the judge erred in charging the jury, that "If a patron directs his factor to sell cotton, for instance, at a certain time, and the factor fails to do it, he can hold the factor to the amount of the value of the cotton at the time he directed it to be sold. If the factor sells without direction and consent of the patron, just does it of his own account, then the patron can hold him liable for the value of that cotton, the highest price for it any time up to the date of demand for it, if he sees fit." V. Because the judge erred in not charging as the law of the case, that the plaintiffs were only entitled to the price of the cotton at the time of direction to sell or demand, and that it was for the jury to say when that demand or direction to sell was made. Exceptions II. and III. were abandoned at the argument.

Exception I. concedes that the general law is as stated by the judge, that "Where a factor undertakes to buy cotton from himself belonging to his principal, then the principal, the man who sends the cotton there, has the right to elect and choose whether he will stand by the sale of the factor to himself, which is improper, or whether he will demand the value of the goods." *Wadsworth* v. *Gay,* 118 Mass., 44. But it is claimed that it was inapplicable to this case, for the reason that the factor had made advances on the cotton, and that gave him such a general lien on the property as justified him in selling it without orders, or for less than the price fixed. "A factor is not justified in selling at a price below that fixed by the principal, from the single fact that he has made advances upon the property." There are cases where the factor, in order to save himself, may sell without orders, provided there is entire good faith. But we do not understand that such indulgence in a class of exceptional cases, necessarily takes away the right of election, where the factor sells to himself. The consignor's right to elect, of course, could not be exercised until the fact which authorized it was known. The judge left it to the jury to determine, "when the plaintiffs learned the facts of the sale." Besides, the consignors did not sue the factors for the value of the property; but, after declining for a time, finally elected to affirm the sale, and take what the factors reported as due to the plaintiffs, and more than once—indeed, up to two days before—urged them to receive.

Exception IV. complains that it was error to charge the jury that, "If a patron directs his factor to sell cotton, for instance, at a certain time, and the factor fails to do it, he can hold the factor to the amount of the value at the time he directed it sold. If the factor sells without direction and consent of the patron, just does it of his own account, then the patron can hold him liable for the value of that cotton, the highest price for it any time up to the date of demand for it, if he sees fit." We do not think that, as a general proposition, this was erroneous. But, if it were error, the defendants were in no way injured by it; for the action was not brought for the value of the property at any particular time, but for what

it had been actually sold for, according to their own report repeatedly made. In a previous part of his charge, the judge had already instructed the jury, that, if the factors were in advance to Sims & Co., they had a right to sell his cotton.

Exception V. complains that the judge "erred in not charging as the law of the case, that the plaintiffs were only entitled to the price of the cotton at the time of demand or direction to sell, and that it was for the jury to say when that demand or direction to sell was made." From January to April, the defendants insisted that the plaintiffs should be satisfied to take what they, the defendants, had charged themselves for the cotton. Between the 6th and 8th of April, the defendants suddenly changed their minds, and refused to give that which they had so often proposed, unless an account for $54.08 for storage, insurance, and interest, from the time of the January sale, should be deducted, leaving the amount due $172.57. Assuming the correctness of the defendants' statement, that after the cotton of plaintiffs was sold, and they refused to ratify the sale, the defendants looked around, and, for the purpose of protecting themselves, purchased other cotton of the same class and amount—if this be the correct statement, we agree that the storage, insurance, interest, &c., upon that substituted cotton, should not properly be charged to the plaintiffs, Sims & Co.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.