WILLIAM J. DOUNCE, Respondent, *v.* BENJAMIN F. Dow et al., Appellants.

Where an executory contract for the sale of material, to be manufactured into articles of merchandise, is with warranty of its fitness for the purpose intended, the vendee, upon receipt, is not bound to apply tests before using; but if defects, not open and visible, are thereafter discovered, which amount to a breach of the warranty, he has his remedy thereon.

Plaintiff contracted to sell and deliver to defendants "ten tons of XX pipe iron," which he agreed should be of a quality suitable and proper for use in defendants' manufacturing business. Plaintiff knew what defendants' business was; he delivered ten tons of iron, apparently of the kind and quality specified, but in fact of a quality unfitted and worthless for use in defendants' business. The quality of the iron was not discoverable by inspection merely, but might have been ascertained by breaking it with a sledge. Defendants received and used a portion of it, without any previous test to ascertain its quality. In an action to recover the purchase-price, *held*, that the agreement as to quality was a warranty, and that defendants were entitled to counter-claim their damages for its breach.

*Reed* v. *Randall* (29 N. Y., 358) distinguished.

(Argued September 24, 1873; decided January term, 1874.)

APPEAL from a judgment of the General Term of the Supreme Court in the fourth judicial department in favor of the plaintiff, entered upon an order denying a motion for a new trial and directing judgment upon verdict.

This action was brought upon a promissory note, dated 12th February, 1869, given by the defendants to the plain-

tiff for the sum of $435.16, payable four months after date.
The making of the note was admitted, and the questions liti-
gated on the trial and involved in this appeal arose out of the
matters set up by the defendants in their answer, and are
stated in the opinion.

The court directed a verdict for plaintiff, which was ren-
dered accordingly.    Exceptions were ordered to be heard at
first instance at General Term.

*J. B. Adams* for the appellants.    Defendants were not
bound to examine or test the iron for latent defects, or to
return it.    (*Hoe* v. *Sanborn*, 21 N. Y., 552, 562; *Jones* v.
*Bright*, 5 Bing., 533; *Brown* v. *Edgington*, 2 M. & Gr.,
371; *Passinger* v. *Thorburn*, 34 N. Y., 634; *Beals* v. *Olm-
sted*, 24 Vt., 114; Story on Con. [2d ed.], § 836; Sedg. on
Dam. [4th ed.], 333, note; 2 Kent's Com. [10th ed.], 660;
*Muller* v. *Eno*, 14 N. Y., 597.)    From the circumstances
attending the sale, the jury were authorized in finding that
there was an express warranty as to quality.    (1 Pars. on
Con. [5th ed.], 581, 583, and authorities cited; *Hastings* v.
*Loering*, 2 Pick., 214; Story on Con. [2d ed.], § 513; Comyn
on Con. [4th Am. ed.], 147; *Cramer* v. *Bradshaw*, 10 J. R.,
481; *Muller* v. *Eno*, 14 N. Y., 597; *Renaud* v. *Peck*, 2 Hilt.,
137; *Sweet* v. *Bradley*, 24 Barb., 549; *Rogers* v. *Ackerman*,
22 id., 134.)    The court erred in holding and treating this as
a case of executory contract.    (1 Pars. on Con. [5th ed.],
583.)    The court erred in rejecting the evidence of custom
in testing iron, among manufacturers, offered by the defend-
ants.    (*Dalton* v. *Daniels*, 2 Hilt., 472; *Allen* v. *Mer. Bk.*,
22 Wend., 215; 2 Pars. on Con., 535.)    Defendants were
entitled to such damages as were the natural and necessary
consequences of the breach of plaintiff's contract.    (*Passin-
ger* v. *Thorburn*, 34 N. Y., 634; *Bk. of Kingston* v. *Eltinge*,
40 id., 391.)

*J. R. Ward* for the respondent.    The contract being exec-
utory, it was defendants' duty to examine and test the iron

immediately upon its receipt. (*Hargous* v. *Stone*, 5 N. Y., 86, *et seq.*; *Beck* v. *Sheldon*, 48 id., 365, 373; *Reed* v. *Randall*, 29 id., 362, *et seq.*) No warranty can be implied from the fact that plaintiff knew defendants' business, and that they wanted the iron to use in their business. (*Bartlett* v. *Hoppock*, 34 N. Y., 118, 122, 125; *Beck* v. *Sheldon*, 48 id., 365, 370, 371.) No warranty is to be implied in an executory contract. (*Hargous* v. *Stone*, 5 N. Y., 86; *Reed* v. *Randall*, 29 id., 362, *et seq.*; *Hoe* v. *Sanborn*, 21 id., 557, 558.)

Lott, Ch. C. The defendants in their answer allege, as a ground of counter-claim, that the note on which this action was brought was given for a quantity of iron bought by them of the plaintiff which, on delivery, was worthless; and as the decision to be reached by us is to be settled and determined by the construction to be given to the contract between the parties, it is deemed proper to set it forth as alleged in the answer; that, after stating that the defendants for a long time prior to the 12th day of February, 1869 (the date of the note), and up to that time had been and then were extensively engaged in the making and manufacturing and selling of iron castings for mowing machines, threshing machines and other farming and mechanical implements, and in the making, manufacturing and selling of such machines and implements, which was well known to said plaintiff, averred "that said note was so made, executed and delivered by said defendants to said plaintiff for the purchase-price of ten tons of XX pipe iron which had been theretofore ordered by said defendants from said plaintiff; that the kind of iron so ordered as aforesaid was the very best quality of iron, bringing the highest price in market, and particularly valuable in said defendants' manufacturing business for its tenacity and toughness, of well defined and established reputation, qualities and characteristics; and which said ten tons of XX pipe iron, of said tenacity, toughness, quality and characteristics, said *plaintiff had agreed* to deliver to said defendants within a reasonable

time, and which *should be of a quality suitable and proper for use in said defendants' manufacturing business;* and that such note was given for no other consideration whatever, and was so made, executed and delivered as aforesaid *after* such iron had been ordered as aforesaid by said defendants, and *before* the same had been delivered by said plaintiff, or received by said defendants, and "that, thereafter, said plaintiff delivered to said defendants ten tons of iron which was apparently of the kind and quality ordered as aforesaid, but which was in fact brittle, rotten and entirely worthless, and of no value whatever to said defendants."

It is then further averred "that said defendants had melted, mixed and mingled about five tons of the iron so delivered to them by said plaintiff with other and valuable iron in the making and manufacturing of such iron castings for mowing machines, threshing machines and other farming and mechanical implements, and in the making and manufacturing of such machines and farming and mechanical implements, in the making and manufacturing of which said defendants were engaged as aforesaid before they, said defendants, had any knowledge that such iron so delivered to them as aforesaid by said plaintiff was brittle, rotten, entirely worthless, and of no value whatever to them, said defendants."

" That, immediately after ascertaining the quality of the iron so delivered to them as aforesaid by said plaintiff, said defendants notified said plaintiff of the deficiency in the quality and character of such iron, and requested said plaintiff to take away the balance of said ten tons of iron, to wit: about five tons which had not been melted, mixed and mingled with other iron as aforesaid, but that said plaintiff has never complied with such request of said defendants in this regard; and said defendants have at all times been, and still are, ready and willing to deliver said balance of such iron to said plaintiff, and that they have since held, and still hold, the same for him and subject to his order, of which said plaintiff has, at all times since, had notice."

The contract, as above stated, is not merely for the delivery

of iron classified and known as " XX pipe iron," and the iron of that designation and name, but that it "should be of a quality suitable and proper for use in said defendants' manufacturing business." It was an express agreement or warranty that it should be of that specified or designated quality.

It was admitted by the plaintiff, on the trial, "that the iron furnished to the defendants by the plaintiff was so furnished and delivered upon a previous contract made between the parties, and that the note in suit was given in pursuance of the contract set up in the answer;" and, also, " that the plaintiff knew what was the business of the defendants and that the iron to be furnished was to be used in that business." It also appears, by the proof, that the iron delivered was not of the quality agreed to be furnished, and that the allegations in the answer in reference thereto, and as to its use and the action of the parties after the discovery of its quality are substantially correct. It appears that the iron, after it was received by the defendants, was used continuously for about a month without any previous test by them of its quality; such test was easy and practical, without melting and without expense, by the use of a sledge in breaking it; but its quality could not be told "by its looks," as "all pig irons look pretty much alike."

After the testimony was closed, the court "held and decided that the contract under which the iron in question was bought was an executory contract; that the defendants, under this contract, were bound to examine and test the iron upon its receipt by them and before using it; that having used the iron, or a large portion of it, without testing or examining it, they must be held to have accepted it, as complying with the terms of the contract, and thus to have precluded themselves from any claim for damages for a breach of the contract by reason of any defect which they might have discovered by such examination and test." An exception to this ruling and decision was taken, which raises the only question I deem it necessary to consider. Upon the

application of it to the facts of the case, as above set forth, a verdict was directed in favor of the plaintiff on which judgment was entered. The General Term affirmed it. The judge who gave the opinion of the court on its affirmance, after referring to the ruling and decision above specially set forth, said: "We think the ruling at the circuit was clearly right, as the adjudications stand. It clearly appears from the evidence that the defendants might have ascertained the quality of the iron. They had abundant opportunity to do so, that they omitted to do so was their own neglect, and whether this neglect was in accordance with the usual custom or not makes no difference. The case seems to be entirely disposed of by the principles laid down in *Reed* v. *Randall* (29 N. Y., 352);" and under a view of the law as there expressed, and the assumption that the doctrine of that case was applicable to this, a new trial was denied. That assumption was unauthorized. It appears by a reference to the facts, as stated in the report of that case and the prevailing opinion of Judge WRIGHT, that the executory agreement of sale was held not to constitute an *express* warranty that the tobacco (which was the article sold), should, when delivered be well cured and in a good condition; but that the sale was of "a particular thing by its proper description merely," which the law *implied* should be, when furnished, of a merchantable quality. He further said: "A warranty, then, cannot be predicated upon the contract alleged in the complaint, and the rules of law by which the rights of parties in respect to warranties are regulated are inapplicable. A breach of the contract was not a breach of warranty, but a mere non-compliance with the contract that the defendant had agreed to fulfill." He then proceeds to consider the case on the theory or principle that it was an executory contract but not of an express warranty, and reached the conclusion that the remedy of the vendee in such a case, to recover damages on the ground that the article furnished does not correspond with the contract, does not survive the acceptance of the property by the vendee, after opportunity to ascertain the defect,

unless notice has been given to the vendor or the vendee offers to return the property; and held that its retention by the purchaser was an assent on his part that the contract had been performed.

Assuming that I am correct in construing the agreement alleged in the answer of the defendants, above set forth, to be a contract of *express warranty*, it is clear that the case of *Reed* v. *Randall* (*supra*), which controlled the decision of the Supreme Court in this, is not applicable to it. The rule defining the rights and duties in a case of *express* warranty, in an executory contract of sale, has been lately considered and decided by the present Court of Appeals, in *Day* v. *Pool* (52 N. Y., 416, etc.), the late Judge PECKHAM giving the pre-vailing opinion, and it is there held (as correctly and tersely expressed in the head-note of the case) " that the vendee, in an executory contract of sale, with warranty as to the quality of the article contracted for, upon the receipt of the article and the subsequent discovery of a breach, is not bound to return, or offer to return, the property, but may retain and use the same and have his remedy." The question is exam-ined with care and ability. The principal authorities bearing on the question, including those of *Reed* v. *Randall* (*supra*) and *McCormick* v. *Sarson* (45 N. Y., 265), and cases there referred to, are considered, and, in reference to those, the learned judge says: " Neither was a case of express war-ranty, and each one that speaks upon the subject expressly excepts the rule there laid down, from a case of warranty, as inapplicable.". It may also be proper, in view of the nature and character of the defect of the iron, as disclosed by the evidence in the present case (it being such as not to be dis-covered by inspection merely), to add that the learned judge also said, that " the purchaser, in an executory sale, could not rely upon a warranty as to open, plainly apparent defects, any more than he could in a sale *in presenti,*" so that the extent of the decision might not be misapprehended.

The views expressed by the learned judge accord with my own conviction of the true rule and principle of law applica-

ble to the question, and being concurred in by a majority of the court (although dissented from by three of his associates), must control us in our decision.

It follows that the judgment appealed from must be reversed and a new trial ordered, costs to abide the event.

All concur.

Judgment reversed.