MICHAEL McPARLIN AND OTHERS, RESPONDENTS, *v.* EBEN M. BOYNTON, APPELLANT.

*Warranty — Inspection of goods before delivery — effect of — Penalty.*

Where parties stipulate that articles to be manufactured shall be of a particular kind and quality, and at the same time stipulate that they shall be tested by some person selected by the purchaser before delivery, to ascertain whether they are of the specified kind and quality, and such test is in fact made by him, and the goods are thereupon delivered and accepted, there is, in the absence of fraud and collusion between the manufacturer and the person selected to test the goods, no remedy by action upon the contract, even though the goods, or some portion of them, are subsequently ascertained not to be equal to the warranty.

The plaintiff agreed, in writing, to manufacture for the defendant certain saws of the "best cut steel, hardened and tempered, carefully ground to three gauges thin on back and filed, set and warranted best in every particular. The saws to be tested by your man employed for the purpose of filing and finishing same." *Held,* that the defendant having appointed a man to test the saws in pursuance of the contract was bound by his decision, and could not thereafter set up a breach of the warranty as a defense to an action for the purchase-price.

The contract further provided, that "all saws not taken by you in sixty days from completion of their manufacture we shall charge thereon interest at the rate of ten (10) per cent per annum." *Held,* that this meant that if, for any reason, defendant was not in readiness to receive the saws within sixty days, and their delivery was thereby postponed beyond that period, he should pay ten per cent for the period that might elapse between the expiration of sixty days from manufacture and the time of delivery.

APPEAL from a judgment in favor of the plaintiff entered upon the report of a referee.

*Erastus New,* for the appellant. A vendee, in an executory contract of sale, with an express warranty as to the quality of the article contracted for, upon receipt of the article and subsequent discovery of a defect covered by the warranty, is not bound to return or offer to return the article, but may retain and use it, and have his remedy on the warranty. (*Dounce* v. *Dow,* 57 N. Y., 16; *Park et al.* v. *Morris Axe, etc., Co.,* 54 id., 586; *Day* v. *Pool,* 52 id., 416; *Foote* v. *Bentley,* 44 id., 166; *Muller* v. *Eno,* 14 id., 598; *Hoe* v. *Sanborn,* 21 id., 553.) It seems to be the settled law in this

State, that where there is an express warranty, and no fraud, the vendee cannot rescind and return the property, but his only remedy is on the warranty. (*Park* v. *Morris Tool Co.*, 54 N. Y., 587; *Day* v. *Pool*, 52 id., 416; *Reed* v. *Randall*, 29 id., 358; *Muller* v. *Eno*, 14 id., 597.) The rule which excepts a patent defect from the operation of a general warranty does not apply where the warranty is specific, nor where the article sold is not in existence, and cannot be seen by the vendee at the time of making the agreement of warranty. (*Dounce* v. *Dow*, 57 N. Y., 16; *Park* v. *Morris Tool Co.*, 54 id., 586; *Day* v. *Pool*, 52 id., 416; *Foote* v. *Bentley*, 44 id., 166; *Muller* v. *Eno*, 14 id., 598; *Chatfield* v. *Frost*, 3 N. Y. S. C., 359; *Birdseye* v. *Frost*, 34 Barb., 367; Chitty on Cont., [11th Am. ed., vol. 1], 644; Benjamin on Sales, 535; Parsons on Cont., vol. 1, 576, n. *h*.)

*C. Bainbridge Smith*, for the respondents.

DAVIS, P. J.:

This is an action to recover a portion of the price agreed to be paid for a large number of saws manufactured by the plaintiffs for the defendant in the years 1867 and 1868. There is substantially no dispute in the case as to the quantity manufactured, the price to be paid, nor as to the delivery of the saws, nor do we think there is any question left for our consideration after the findings of the referee upon the conflicting evidence touching any of the saws except those manufactured under an agreement in writing bearing date July 1st, 1867. That agreement is contained in a letter written by the plaintiff to the defendant, and is in the following words:

*July 1st*, 1867.

E. M. BOYNTON, Esq.:

DEAR SIR.— We enter your order of this date for 1006 cross-cut saws of your patent, viz.: 100—6, 100—6½, 400—7, 100—7½, 6—8 feet, at seventy cents per foot to 7 feet, all over 7 feet to 8 feet, 5 per cent advance. Boxing and dray added, payable within sixty days of each invoice delivered at Hamilton, O., then shipped as directed by you. These saws are to be made of Wm. Jessop & Son's best cross-cut steel, hardened and tempered, carefully ground

to three gauges thin on back, and filed, set, and warranted best in every particular. The saws to be tested by your man employed for the purpose of filing and finishing same, we to furnish room and bench for his use at our shop free, you to furnish him the necessary tools for his work, and in case of your absence will act for you in the payment of his wages from any moneys you may send us at the rate of $2.50 per day. And all saws not taken by you in sixty days from completion of their manufacture we shall charge thereon interest at the rate of ten per cent per annum.

Truly yours,

WOODROUGH & McPARLIN.

The plaintiffs manufactured and delivered to the defendant the number of saws of the sizes and kinds required by this contract. The evidence tends to show and there can be little doubt that a very considerable number of the saws so manufactured turned out to be badly tempered, and in consequence soft and useless for the purpose for which they were intended. Many of them were afterwards retempered by the plaintiffs at the expense of the parties from whom they were received, or of defendant, and many others remained on hand undisposed of which were not retempered. The question as to the kind and quality of the steel of which these saws were manufactured, on which the evidence was conflicting but decidedly preponderating in favor of the plaintiffs, was disposed of favorably to plaintiffs, and as we think properly, by the referee. There can be no doubt that the contract contains an express warranty of the saws, upon which the defendant would in the absence of other provisions in the contract be entitled to a recoupment of damages in this action. The warranty is in these words: "These saws are to be made of William Jessop & Son's best cross-cut steel, hardened and tempered carefully, ground to three gauges thin on back, and filed, set, and warranted best in every particular."

It is claimed by the defendant that this warranty was broken in three particulars: First, as to the kind of steel used; second, as to the hardening and tempering of the saws; and, third, as to their being ground to three gauges thin on the back.

The first of these was disposed of by the finding of the referee above referred to. None of them however, can be disposed of by

the mere fact that the defendant received and sold or used the saws. He had the right to receive them relying upon the warranty, and relying upon his remedy for its breach if it turned out that the warranty was broken. (*Dounce* v. *Dow*, 57 N. Y., 16; *Parks* v. *Morris Ax Co*, 54 id., 586; *Day* v. *Pool*, 52 id., 416; and cases cited by these authorities.) Nor can the plaintiffs escape responsibility on the ground that the defect in temper and in thickness were easily discoverable by experienced persons by the use of proper instruments or appliances. These were not of the character of patent defects to which warranties are not applicable. The defendant is therefore entitled to a new trial in this case unless he is precluded from asserting the warranty by certain other provisions of the contract. Immediately following the warranty above quoted, the contract contains these words: "The saws to be tested by your man employed for the purpose of filing and finishing same, we to furnish a room and bench for his use at our shop, free, you to furnish him the necessary tools for his work." This raises the question whether the parties have not, by the express terms of the contract, provided a means for determining before delivery whether or not the saws to be manufactured were of the kind required by the contract in conformity to the warranty. It was very clearly in their power to make such an arrangement; and where parties stipulate that articles to be manufactured shall be of a particular kind and quality, and at the same time stipulate that they shall be tested by some person selected by the purchaser before delivery to ascertain whether they are of the specified kind and quality, and such test is in fact made by him, and the goods are thereupon delivered and accepted, no remedy by action can be had upon the contract, although the goods, or some portion of them, are subsequently ascertained not to be equal to the warranty. In the absence of fraud and of collusion between the manufacturer and the person selected, his decision upon the test that the articles are such as the contract requires, is conclusive against the purchaser who subsequently receives them. The evidence shows that the defendant sent to the shop of the plaintiffs a person of the name of Carlisle, to act on his behalf under the contract; that he was furnished with a room and bench for his use in the shop of plaintiffs, and such tools as were used by him were furnished by defend-

ant ; that he remained while the saws were being manufactured, and that they were sent to his room where he applied or was at liberty to apply such tests as he chose in respect to them. There is conflicting evidence in the case as to whether or not he had access to the tempering room of the plaintiffs, and gave directions in respect to the tempering of the saws, but on that question the evidence strongly tends to show that he had the fullest opportunities, and did give directions in relation to the tempering, and that the saws all passed through his hands as they were manufactured, and that some of them were pronounced by him too soft and were returned to the tempering room and again brought to his room for such further process of filing and finishing as he chose to apply. Under this state of facts, we think the referee was right in holding that the delivery of the saws and their acceptance by the plaintiffs, after the action of Carlisle in respect thereto, was a complete performance of the contract, and that no recoupment could be had under the warranty. It would seem, from some of the testimony given, that the defendant supposed that all the duty Carlisle was to perform under the contract related to filing and finishing the saws as they were delivered, from time to time, into his hands ; but the contract was in writing. The language is plain, and its construction must be determined by what the writing contains. It says, " the saws are to be tested by your man employed for the purpose of filing and finishing same." All that is said in respect to filing and finishing has only the effect of indicating that the man employed for that purpose shall be the person who is to test the saws. For that person the plaintiffs were bound to furnish a room and bench in their shop free of charge, the defendant to furnish him necessary tools for his work, which work embraces both the testing, and the filing and finishing of the saws. We think the language is hardly capable of another construction. The defendant had the privilege of selecting any person he chose. It was both his interest and duty to select an entirely competent and skillful man. If he failed to do that it was his misfortune or neglect. There can be no doubt that the defendant was not bound to take any of the saws rejected by the person he employed for not coming up to the requirements of the contract in any respect. It is more than probable that the defendant selected an incompetent man, but as all the saws, as they were made, were

delivered into his hands and passed upon by him, and subsequently delivered to the defendant, no remedy remained for lack of compliance with the contract, unless on some ground of fraud, which is not alleged. The result of this view of the contract is, that the conclusion of the referee as to the liability of the defendant for the saws manufactured is correct; and his finding that the defects were readily discoverable by the use of certain appliances, becomes immaterial.

The referee has found a balance due from the defendant to the plaintiff of $1,705.24, with interest thereon at the rate of ten per cent from the 17th of November, 1868. He bases the right to recover interest at the rate of ten per cent upon this clause of the contract : " And all the saws not taken by you in sixty days from completion of their manufacture, we shall charge thereon interest at the rate of ten per cent per annum." The previous clause of the contract provides that the price of the saws, adding boxing and drayage, shall be payable within sixty days of each invoice delivered at Hamilton, Ohio. The clause imposing interest at ten per cent applies, in express terms, only to saws not taken by the defendant in sixty days from the completion of their manufacture. The evidence shows that all the saws were taken by the defendant within sixty days from the completion of their manufacture. The clause is somewhat difficult of construction, but as ten per cent is imposed in some sort as a penalty, we are inclined to think it should be strictly construed in favor of the defendant, and held to mean, that if, for any reason, he was not in readiness to receive the saws within sixty days, and their delivery was thereby postponed beyond that period so that the sixty days' time for payment would not commence to run by reason of non-delivery, he should pay ten per cent for the period that might elapse between the expiration of sixty days from manufacture and the time of delivery. Under that construction the case shows nothing to which the penalty of ten per cent could be applied. The rate of interest should, therefore, have been, in the absence of proof of the legal rate in Ohio, in accordance with the legal rate of our own State. (*Leavenworth* v. *Brockway*, 2 Hill, 201; *City Savings Bank* v. *Bidwell*, 29 Barb., 325; and see note "A" to *Leavenworth* v. *Brockway*, *supra*.)

Judgment must be reversed and new trial granted, with costs to

abide event, unless plaintiff stipulates to reduce the amount allowed for interest by deducting therefrom $295.55, within twenty days after entry of order, in which case judgment is affirmed for the residue without costs of appeal to either party.

DANIELS and BRADY, JJ., concurred.

Judgment reversed, new trial ordered, costs to abide event, unless plaintiff stipulates to reduce amount allowed for interest by deducting therefrom $295.55, within twenty days after entry of order, in which case judgment affirmed for residue, without costs of appeal to either party.