FAIRBANK CANNING COMPANY, Respondent, *v.* SETH X. METZGER et al., Appellant.

Defendants contracted to purchase dressed beef of plaintiff, which the latter agreed should be beef that had not been heated before being killed ; the beef to be delivered on board of cars at Chicago. In an action to recover the purchase-price, *held,* that plaintiff's agreement amounted to an express warranty, which survived delivery and acceptance ; and that defendants were entitled to recover damages, by reason of a breach thereof, by way of counter-claim.

It is not necessary, in order to constitute an express warranty on sale of goods, that the word "warranty" should be used ; a positive affirmation as to quality, understood and relied upon by the vendee as such, is sufficient.

The right to recover damages for the breach of such a warranty survives acceptance.

As to whether the vendee has the right to return the property on discovery of the breach, *quære.*

*F. C. Co.* v. *Metzger* (43 Hun, 71), reversed.

(Argued December 11, 1889; decided January 14, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made January 11, 1887, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought to recover the contract price of a car load of dressed beef.

The answer averred, by way of counter-claim a warranty, that the meat should be clean, well-dressed, and in first class condition, not heated before being killed, and a breach thereof by reason of which defendant sustained damage.

The following facts appeared :

The plaintiff is a corporation engaged in buying and slaughtering cattle and selling fresh dressed beef in Chicago. The defendants are co-partners engaged in wholesaling and retailing meat. In February, 1883, the plaintiff by letter solicited the defendants to purchase from it what dressed beef they required. It resulted in a contract, made entirely by correspondence, for meat to be wholesaled from the car by defendant's agent

from Dunkirk to Elmira, the portion remaining unsold when the cars should reach Elmira to be retailed by the defendants. The defendants ordered at different times four car loads of fresh beef and, pursuant to their agreement, on receipt of the bill for the second and third car loads, and before the arrival of the goods, paid the plaintiff therefor by a draft on New York.

The referee found as facts: That the plaintiff was to deliver the beef on board the cars at Chicago, which was a delivery to the defendants, and the same then and there became the property of the defendants. That by the agreement made between the parties the plaintiff represented and agreed to furnish the defendants beef that had not been heated before being killed; that should be thoroughly chilled before being loaded on the cars; that it should be in first class condition in every respect and merchantable. That a portion of the meat furnished, including all of the fourth car load, had been heated before being killed and was not in first class condition or merchantable when shipped at Chicago. That as to the fourth car load the "defendants did all they could to dispose of it, and save what they could from it, after the car had been opened several times on different days between Dunkirk and Elmira and finding they could not use it they shipped back to the plaintiff 12,991 pounds, and notified plaintiff by wire of the same, and plaintiff immediately wired back that they would not receive it, whereupon the defendants ordered the same back to Elmira."

The referee found, as a matter of law, that there was no warranty, and directed a judgment to be entered in favor of the plaintiff for the contract price.

Further facts appear in the opinion.

*Gabriel L. Smith* for appellant. There is a warranty established in this case as a matter of law. (*Dwight* v. *G. L. Ins. Co.*, 103 N. Y. 342; *Brady* v. *Cassidy*, 104 id. 155; *T. G. C. Co.* v. *Smith*, 110 id. 87; *Smalley* v. *Henderson*, 5 Dutcher 371; *Brown* v. *Bigalow*, 10 Allen, 244; 2 Schouler on Per-

sonal Property, 327; Benjamin on Sales, §§ 600, 613; *Hawkins* v. *Pemberton,* 51 N. Y. 198. *Kent* v. *Friedman,* 17 Wkly Dig., 484; 18 Alb. L. J., 324; *Beals* v. *Olmstead,* 24 Vt., 114; *Pease* v. *Sabin,* 38 id. 432; *Jones* v. *Bright,* 5 Bing. 533; *Bragg* v. *Morrell,* 49 Vt. 45; *Leopold* v. *Van Kirk,* 27 Wis. 152; *Brown* v. *Murphee,* 21 Miss. 91; *Cunningham* v. *Hall,* 1 Sprague, 404; *Beers* v. *Williams,* 16 Ill. 69; *Walton* v. *Cody,* 1 Wis. 420; *Brenton* v. *Davis,* 8 Blackf. 317; *R. M. Works* v. *Chandler,* 56 Ind. 575; *Fisk* v. *Tauk,* 12 Wis, 276; *Rogers* v. *Niles,* 11 Ohio St. 48; Benjamin on Sales, §§ 656, 918, 966, 988; *Brown* v. *Edgington,* 2 M. & G. 279; *Jones* v. *Bright,* 5 Bing. 533; *P. C. I. Co.* v. *Groves,* 68 Penn. 149; *R. M. Works* v. *Chandler,* 56 Ind. 575; *Taylor* v. *Cole,* 111 Mass. 363; *Gautier* v. *Douglass,* 13 Hun, 154; *Howard* v. *Hoey,* 23 Wend. 350; *Van Wight* v. *Allen,* 69 N. Y. 61; *Hoe* v. *Sanburn,* 21 id. 552; Story on Sales, § 371; *Cosgrove* v. *Burnett,* 31 Alb. L. Jour. 140; 2 Schouler on Sales, 355; *Pease* v. *Sabin,* 3 Veasey, 432; *Hogins* v. *Plympton,* 11 Pick. 99–100; *Winsor* v. *Lombard,* 18 id. 60; *Henshaw* v. *Robbins,* 9 Metc. 87; *White* v. *Miller,*17 N. Y. 129; *Jones* v. *Just,* L. R. [3 Q. B.], 107; *Laing* v. *Fidgeon,* 4 Camp. 169; *Granmiel* v. *Gunby,* 52 Ga. 504; *Rive* v. *Forsyth,* 41 Md. 389; *Hoe* v. *Sanburn,* 21 N. Y. 552; *Brown* v. *Sayles,* 27 Vt. 227; *Dutton* v. *Gerrish,* 9 Cush. 89; Benjamin on Sales, §§ 983, 989; *Howard* v. *Hoey,* 23 Wend. 350; *Merriam* v. *Field,* 24 Wis. 640; 39 id. 578; *Peck* v. *Armstrong,* 38 Barb. 215; *Spence* v. *Duffield,* 1 Ans. Jur. Rep. 74; 18 Alb. L. Jour. 325; *Beir* v. *Walker,* 46 L. J. [C. P.] 677; *Moses* v. *Mead,* 1 Denio, 378; 5 id. 617; *Copas* v. *A. A. P. Co.,* Supr. Ct. of Mich., Feb. 1, 1889; *Birch* v. *Spencer,* 15 Hun, 504; *Leopold* v. *Van Kirke,* 27 Wis. 152; *Smith* v. *Richards,* 13 Pet. 30, 42; *Kent* v. *Friedman,* 17 Wkly, Dig. 484; 101 N. Y. 616; *Dounce* v. *Dow,* 64 id. 416; *Briggs* v. *Hilton,* 99 id. 517.) There was no such acceptance of the beef by the defendants, as waived their right to damages against the plaintiffs for their breach of contract. (Benjamin on Sales, § 92; Hare on Contracts, 396; *Knapp* v. *Simon,* 96 N. Y. 290;

*Reed* v. *Randall,* 39 id. 358 ; *Beck* v. *Sheldon,* 48 id. 365 ; *Dutchess Co.* v. *Harding,* 49 id. 321 ; *G. Mfg. Co.* v. *Allen,* 53 id. 515 ; *Dounce* v. *Dow,* 64 id. 411 ; *Gautier* v. *D. Mfg. Co.,* 13 Hun, 514, 525 ; *Dodge* v. *McCormick,* 22 Wkly Dig. 517 ; *Maxwell* v. *Lee,* 27 N. W. Rep. 196 ; *Thompson* v. *Libby,* 29 id. 150 ; *C. I. Co.* v. *Pope,* 108 N. Y. 232 ; *Norton* v. *Dreyfuss,* 106 id. 94 ; *Gurney* v. *A. & G. W. R. Co.,* 58 id. 358 ; *Pierson* v. *Crooks,* 26 N. Y. S. R. 492 ; *Sprague* v. *Blake,* 20 Wend. 64 ; *Muller* v. *Eno,* 14 N. Y. 597 ; *Day* v. *Pool,* 52 id. 416 ; *Parks* v. *M. A. & T. Co.,* 54 id. 587 ; *Gurney* v. *A. & G. W. R. Co.,* 58 id. 358 ; *Brigg* v. *Hilton,* 99 id. 529 ; *Brown* v. *Foster,* 108 id. 387 ; *Studer* v. *Bleistein,* 26 N. Y. S. R. 400 ; *Case* v. *Simonds,* id. 832 ; *Divine* v. *McCormick,* 50 Barb. 116 ; *Hamilton* v. *McPherson,* 28 N. Y. 72 ; *Johnson* v. *Meeker,* 96 id. 97 ; *Atkins* v. *Elwell,* 45 id. 753.)

*Henry S. Redfield* for respondent.    There was no warranty as to the quality and condition of the beef. (*O. M. Soc.* v. *Lawrence,* 4 Cow. 440 ; *Duffy* v. *Mason,* 8 id. 25 ; *Rogers* v. *Ackerman,* 22 Barb. 134 ; *Greenthal* v. *Schneider,* 52 How. 133 ; *Bartlett* v. *Hopcock,* 34 N. Y. 118 ; *Shippen* v. *Bowen,* 122 U. S. 575 ; *Hallock* v. *Mallett,* 13 N. Y. S. R. 263 ; *Chalmers* v. *Harding,* 17 L. T. [N. S.], 571 ; 2 Schouler, 335 ; Benjamin on Sales [4th ed.], 599, 806, §§ 610, 929.) Even if this were a case of express warranty, the defendants could not recoup damages for the breach thereof, after acceptance and sale of beef, because the defects were open and visible and known. (*Day* v. *Pool,* 52 N. Y. 146 ; *Parks* v. *M. A. Co.,* 54 id. 586 ; *Dounce* v. *Dow,* 57 id. 16 ; *Briggs* v. *Hilton,* 99 id. 517 ; *Bennett* v. *Buchan,* 76 N. Y. 386 ; *Brown* v. *Burhans,* 4 Hun, 227 ; *G. C. M. Co.* v. *Mann,* 3 N. Y. S. R. 301 ; *Vanderwalker* v. *Osmer,* 65 Barb. 556 ; *Studer* v. *Bleistein,* 26 N. Y. S. R. 400.) This was an excutory contract of sale. The representation as to kind and quality of beef was part of the contract of sale itself, descriptive simply of the articles to be delivered in the future. The

defects existing in the beef upon its arrival at Dunkirk and receipt and acceptance by defendants, were open and visible, as appears by the foregoing testimony of the defendant's own witnesses. This being the case they are bound by the receipt and acceptance of the beef, an acceptance in such case being a waiver of any defects and a consent that the articles received correspond with the contract. (*Hogan* v. *Plympton*, 11 Pick. 97; *Winsor* v. *Lombard*, 18 id. 57; *Hawkins* v. *Pemberton*, 51 N. Y. 198; *White* v. *Miller*, 71 id. 118; *Passenger* v. *Thorburn*, 34 id. 634; *Van Wyck* v. *Allen*, 69 id. 61; Benjamin on Sales [4th ed.], § 918; *Reed* v. *Randall*, 29 N. Y. 358; *Beck* v. *Sheldon*, 48 id. 365; *D. Co.* v. *Harding*, 49 id. 321; *G. M. Co.* v. *Allen*, 53 id. 515; *Dounce* v. *Dow*, 64 id. 411; *C. I. Co.* v. *Pope*, 108 id. 232; *Wallace* v. *Blake*, 18 N. Y. S. R. 922; *Maxwell* v. *Lee*, 27 N. W. Rep. 196; *Thompson* v. *Libby*, 29 N. W. Rep. 150; *Studer* v. *Bleistein*, 26 N. Y. S. R. 400; *Van Bracklin* v. *Fonda*, 12 Johns. 467; *Diven* v. *McCormick*, 50 Barb. 116; *Moses* v. *Mead*, 1 Den. 378; 5 id. 617; *Mee* v. *McNider*, 39 Hun, 345; 109 N. Y. 500; *Pierson* v. *Crooks*, 26 N. Y. S. R. 492; *Lessee* v. *Perkins*, 20 id. 933; *Pope* v. *Allis*, 115 U. S. 363; *G. M. Co.* v. *Allen*, 53 N. Y. 515; *Reed* v. *Randall*, 29 id. 358; *Dounce* v. *Dow*, 64 id. 411; *Studer* v. *Bleistein*, 26 N. Y. S. R. 400.)

Parker J. In the absence of a warranty as to quality and a breach, the defendant's claim for damages could not have survived the use of the property. For in such case vendees are bound to rescind the contract and return, or offer to return, the goods. If they omit to do so, they will be conclusively presumed to have acquiesced in their quality. (*Coplay Iron Company* v. *Pope*, 108 N. Y. 232.) Therefore, if the referee was right in holding that there was no warranty as to quality, collateral to the contract of sale, we need not inquire further, as the judgment must be affirmed. The referee has found the facts and this court may properly review his legal conclusion as to whether they amounted to a warranty.

"A warranty is an express or implied statement of something which a party undertakes shall be a part of a contract, and, though part of the contract, collateral to the express object of it." (2 Schouler on Personal Property, 327.) All contracts of sale with warranty, therefore, must contain two independent stipulations:

*First.* An agreement for the transfer of title and possession from the vendor to the vendee.

*Second.* A further agreement that the subject of the sale has certain qualities and conditions.

It is not necessary that in the collateral agreement the word warranty should be used. No particular phraseology is requisite to constitute a warranty. "It must be a representation which the vendee relies on and which is understood by the parties as an absolute assertion, and not the expression of an opinion." (*Oneida Manufacturing Society* v. *Lawrence*, 4 Cow. 440.) It is not necessary that the vendor should have intended the representation to constitute a warranty. If the writing contains that which amounts to a warranty the vendor will not be permitted to say that he did not intend what his language clearly and explicitly declares. (*Hawkins* v. *Pemberton*, 51 N. Y. 198.) In that case the defendants purchased at auction an article, relying upon the representation of the auctioneer that it was "blue vitriol." It was in fact "Salzburger vitriol," an article much less valuable. In an action brought against the purchaser the trial court directed a verdict for the plaintiff. This was held to be error because the representation at the sale amounted to a warranty.

Judge Earl in delivering the opinion of the court after collating and discussing the authorities upon the subject of warranty, said: "The more recent cases hold that a positive affirmation, understood and relied upon as such by the vendee, is an express warranty."

In *Kent* v. *Friedman*, (17 Wkly Dig. 484) Judge Learned in his opinion says: "There can be no difference between an executory contract to sell and deliver goods of such and such a quality and an executory contract to sell and deliver goods

which the vendor warrants to be of such and such a quality. The former is as much a warranty as the latter." The Court of Appeals subsequently affirmed the judgment of the General Term without an opinion. (101 N. Y. 616.)

In *White* v. *Miller* (71 N. Y. 118), frequently referred to as the "Bristol cabbage seed case," the Court says: "The case of *Hawkins* v. *Pemberton* (*supra*) adopts as the law in this state, the doctrine upon this subject now prevailing elsewhere, that a sale of a chattel by a particular description, is a warranty that the article sold is of the kind specified.

So, too, a sale by sample imports a warranty that the quality of the goods shall be equal in every respect to the sample. (*Briggs* v. *Hilton*, 99 N. Y. 517, and cases cited.)

Now, in the case before us, the defendants undertook to purchase of the plaintiff fresh dressed beef to be wholesaled in part and the residue retailed to their customers. They endeavored to procure good beef. Not only did they contract for beef that was clean, well-dressed, in first class condition in every respect, and merchantable, and that was thoroughly chilled before being loaded on the cars; but further, that they should not be given beef that had been heated before being killed.

When, therefore, the plaintiff placed in a suitable car beef well-dressed and clean, and of the general description given in defendants' order, it had made a delivery of the merchandise sold, and by the terms of the contract was entitled to be paid as soon as the bill should reach defendants and before the arrival of the beef made an examination by defendants possible.

But there was another collateral engagement, and yet forming a part of the contract which the plaintiff had not performed. An engagement of much consequence to the defendants and their customers, because it affected the quality of the meat. Upon its performance or non-performance depended whether it should be wholesome as an article of food. It was of such a character that defendants were obliged to rely solely upon the representation of the plaintiff in respect thereto. The

plaintiff or its agents selected from their stock the cattle to be slaughtered. No one else knew or could know whether they were heated and feverish. Inspection immediately after placing the beef in the car would not determine it. That collateral engagement consisted of a representation and agreement that plaintiff would deliver to the defendants beef from cattle that had not been heated before being slaughtered. Such representation and agreement amounted to an express warranty.

The referee found as a fact: "That the meat had been heated before being killed," therefore there was a breach of the warranty, and the defendants are entitled to recover their damages, by way of counter-claim, unless such right must be deemed to have been subsequently waived.

It is not necessary for the disposition of this case to decide and, therefore, it is not decided, whether a warranty is implied in all cases of a sale of fresh dressed meat, by the party slaughtering the animals, that they were not heated before being killed,. and, as some of my associates are averse to any expression whatever upon that question at this time, what is said must be regarded as an individual view rather than that of the court. My attention has not been called to a decision in this state covering that precise question.

It was determined in *Divine* v. *McCormick* (50 Barb. 116), that in the sale of a heifer for immediate consumption, a warranty that she is not diseased and unfit for food is implied. That decision is well founded in principle, and is in accordance with a sound public policy, which demands that the doctrine of "*caveat emptor*" shall be still further encroached upon, rather than that the public health shall be endangered. I see no reason for applying the rule to one who slaughters and sells to his customers for immediate consumption, and denying its application to one who slaughters and sells to another to be retailed by him. In each case it is fresh meat intended for immediate consumption.

The rule is well settled by the courts of last resort in many of the states that a vendor of an article manufactured by him for a particular use, impliedly warrants it against all such defects.

as arise from his unskillfulness either in selecting the materials or in putting them together and adapting them to the required purpose. (See cases cited in Albany Law Journal, vol. 18, page 324.)

One who prepares meat for the wholesale market may be said to come within that rule. Because he purchases the cattle; determines whether they are healthy and in proper condition for food; and upon his skill in dressing and preparing the meat for transportation a long distance, its quality and condition as an article of diet for the consumer largely depends.

In two of the states at least, it is held that where perishable goods are sold to be shipped to a distant market, a warranty is implied that they are properly packed and fit for shipment, but not that they will continue sound for any particular or definite period. (*Mann* v. *Everston*, 32 Ind. 355; *Leopold* v. *Van Kirk*, 27 Wis. 152.)

The respondent insists that the act of defendants' agent in selling some sixty quarters of the beef, before the car reached Elmira, when the defendants, after making a personal examination, immediately shipped that which remained unsold to the plaintiff, constituted a waiver of their claim for damages. It is undoubtedly the rule that in cases of executory contracts for the sale and delivery of personal property, if the article furnished fails to conform to the agreement, the vendee's right to recover damages does not survive an acceptance of the property, after opportunity to ascertain the defect, unless notice has been given to the vendor, or the vendee offers to return the property. (*Reed* v. *Randall*, 29 N. Y. 358; *Beck* v. *Sheldon*, 48 N. Y. 365; *Coplay Iron Co.* v. *Pope*, 108 N. Y. 232.)

But when there is an express warranty it is unimportant whether the sale be regarded as executory or *in presenti*, for it is now well settled that the same rights and remedies attach to an express warranty in an executory, as in a present sale. (*Day* v. *Pool*, 52 N. Y. 416; *Parks* v. *Morris Ax & Tool Co.*, 54 N.Y. 586; *Dounce* v. *Dow*, 57 N. Y. 16; *Briggs* v. *Hilton*, 99 N. Y. 517.)

In such cases the right to recover damages for the breach of the warranty survives an acceptance, the vendee being under no obligation to return the goods.

Indeed his right to return them upon discovery of the breach is questioned in *Day* v. *Pool* (*supra*). And Judge DANFORTH in *Brigg* v. *Hilton* (*supra*), after a careful review of the leading authorities upon the question states the rule as follows: " Where there is an express warranty, it is, if untrue, at once broken and the vendor becomes liable in damages but the purchaser cannot for that reason either refuse to accept the goods or return them."

It follows from the views expressed that the judgment should be reversed.

All concur, except FOLLETT, Ch. J., not sitting.

Judgment reversed.