# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed April 19, 1899.

■■■■■■■■■■■■■■■■

### J. EDWARD BIRD
### VS.
### REAL ESTATE TRUST COMPANY.

*Moses R. Walter* for plaintiff.

*Charles Morris Howard* for defendant.

STOCKBRIDGE, J.—

This case presents three questions for determination. The first of these is, was the plaintiff entitled to have transferred to him the certificate for fifty shares of the defendant company on the 10th day of January, of this year, when the request therefor was made by him? The defendant professes its willingness to make the transfer as of the present time, but denies the right of the plaintiff to have an assignment as of that date. Mr. Brooks, the original subscriber for the stock, paid the first assessment of fifty per cent. thereon about the 1st day of December, and had received from the company a certificate, which, upon its face, declared that he was entitled to fifty shares of its stock, paid, and that the remainder should be payable at such times and on such conditions as the Board of Directors might prescribe, and that upon such payment being made a full paid certificate would be issued. Then follows a separate sentence in these words: "Transferable only on the books of the company."

Apparently the company had no by-laws regulating the transferability of its stock, at any rate, none are mentioned in the evidence, and there is nothing upon the face of the certificate to suggest that there were any such. In behalf of the company it is urged that the certificate in question was not a negotiable instrument and that there was some understanding among the organizers or directors of the company that the certificates that they had issued should not be transferable. The evidence does not bear out this contention. All that is shown is that there had been an agreement between somebody, that "no transfer should be made except under the wording of the certificate" (testimony J. H. Ferguson, 3 Ans.).

It only remains therefore to pass upon the wording of the certificate itself. It is true that the certificates of stock are generally spoken of as non-negotiable, but they are often characterized as quasi negotiable, as has been done by our Court of Appeals in Brandt vs. Ehlen, 59 Md. 25.

Exactly what may be a correct definition of the expression "quasi negotiable," is not easy to say, but from the adjudicated cases it would seem that as to certificates of stock which have been lost or stolen, the law of negotiable instruments has no application, but that in all, or practically all other respects, certificates of stock are deemed negotiable, unless otherwise specified upon the paper itself. The status is clearly stated by Justice Dwight, in the case of Holbrook vs. The New Jersey Zinc Co., 57 N. Y. 22, when he says: "It cannot now be denied that if a corporation having power to issue stock certificates does in fact issue such certificates, in which it affirms that a designated person is entitled to a certain number of shares of stock, it thereby holds out to persons who deal in good faith with the person named in the certificate, that he is an owner, and has capacity to transfer its shares. This proposition does not rest on any view of the negotiability of stock, but on general principles. The certificate itself must be regarded as a continuing affirmation of the ownership in the person therein named, and his power over the stock until it is withdrawn in some manner recognized by law."

In the present case there was nothing upon the certificate to suggest that the stock was not transferable or assignable; on the contrary, it was distinctly stated that it was transferable on the books of the company, thus holding out to all the world that there was no bar in the way of its free transmission by any holder at any time he saw fit. Now, while Courts have always upheld any reasonable regulation affecting the transferability of stock, that has never been extended so as to embrace an arbitrary refusal to transfer on the books of the company. Had it been the design or intention of the stockholders or directors of this company that the stock should not have been transferable until it was fully paid up, or within certain specified times, as, for example, a limited time preceding a date when dividends, if any, were to be declared, it would have been perfectly simple to have accomplished that result by apt words on the face of the certificate, but no such language anywhere appears.

The stock in question had been purchased by Mr. Bird from Mr. Brooks, through a stock broker, in the usual method, for full value on the 10th of December, and an assignment of it in blank had been endorsed thereon at the place provided by the company, and on the 10th of January, after ineffectual attempt had been made by the broker to have the transfer made upon the books of the company, Mr. Bird, the assignee, called in person upon the president of the company, and made his verbal demand for the transfer which was refused. This appears from the correspondence, filed as exhibits in this case. He subsequently made a formal written demand for the transfer on the 20th, and was again refused. This was, however, unnecessary, as the prior verbal demand was sufficient, and the stock should have been transferred upon that date. The plaintiff is therefore entitled to maintain this bill, and to have the stock represented by said certificate No. 25 transferred to him, as of the date of January 10th, 1899.

The second question presented is: What rights, if any, accrued to the plaintiff by reason of his purchase of the fifty shares, in connection with the increase of the stock, which was agreed to by the stockholders of the company on the 20th of January?

As to what was the effect of the assignment in blank upon the certificate, there is some difference in opinion. In New York, in the case of McNeil vs. 10th National Bank, 46 N. Y. 325, it is held that the assignment and delivery of the certificate transferred not only the equitable, but the full legal title, and that the assignee is entitled to all rights and subject to all liabilities incident to the ownership. Other Courts, however, take the view that the full legal title to the stock does not become vested until transfer actually made upon the books of the corporation. The cases which adopt this doctrine agree, however, that the entire equitable title is vested in the assignee, and that the transfer on the books is simply the vesting of a legal title in that, the beneficial title to which was already vested in the assignee. Under this class of cases had Mr. Bird made no application for the transfer of the stock prior to the 20th of January, a condition would be presented which does not arise in this case. He had made a request for the transfer as early as January 10th and was refused, and the corporation can not be heard to set up its own tortious refusal to transfer the stock as a bar to the assertion by Mr. Bird of his rights as owner of that of which he had the entire equitable title, and only failed of having a legal title because of the wrongful act of the company. But it is suggested that by reason of a waiver to any rights in any increase in the stock of the company which might be made, there had arisen an equity as between Mr. Brooks and the company, which extended to any vendee · of his, which would operate to exclude the plaintiff from claiming those rights.

The supposed waiver of Mr. Brooks was signed about the 1st of November. At that date Mr. Brooks was not the owner of any stock in the defendant company. He had subscribed for some of its stock, but had paid nothing whatever upon his subscription; he was under the legal liabilities of a subscriber, but was not the owner of a single share of the stock; there had been no increase of the stock, and there had been no call issued for a meeting of either the stockholders or incorporators to consider the proposition of increasing the stock. There was nothing that Mr. Brooks could waive in existence, and he was not in a position to make a waiver, even if there had been. On the 1st of December Mr. Brooks paid an instalment of 50 per cent. on the amount of his subscription, and received the certificate in the form mentioned; on the 10th of the same month he sold the stock through a broker without any statement whatever, so far as appears from the evidence, of any supposed relinquishment by him of any rights that he might be entitled to, incident upon his ownership of the stock, or that the stock was subject to any equity or bound in any manner whatever; and there is no suggestion contained in the evidence to impugn the entire good faith of Mr. Bird in making the purchase.

It was not until after the entire equitable title had passed to Mr. Bird that the meeting was called to consider the proposed increase of the stock. Until a meeting of the stockholders or incorporators had been duly called and held, it could not as a matter of law be affirmed that the stock would or would not be increased. That was a matter which must rest upon the action of the meeting and until there had been authorized an increase in the amount of the capital stock, there could be no valid subscription therefor, since it might never have any existence. Before the date of the meeting at which the stock of the Real Estate Trust Company was increased, on the 20th of January, Mr. Bird had become the equitable owner of fifty shares of the stock of the company, and as already indicated he was for the purposes of this case, the legal owner of said shares, and therefore entitled to all the rights incident to such ownership, among which was the right to a pro rata share of the increase of the capital stock. This accrued to him by virtue of the charter of the company (Chapter 259 of the Acts of 1898), which distinctly declared that "should the capital stock be at any time increased *the stockholders at the time of such increase* shall be entitled to a pro rata share of such increase, upon the payment of not less than the par value of the same."

Mr. Bird was a stockholder at the time of the increase, and therefore entitled to demand his rights as reserved to him by the charter. For the exercise of this right he was entitled to notice of the action of the company,

and to a reasonable time within which to signify his exercise or waiver of that right. The evidence is uncontradicted that he did not receive from the company any notice whatever of its action taken, but he did five days after the increase present his formal subscription to the stock, which was refused. When it is borne in mind that one of the intervening days was Sunday, he was clearly seeking to exercise his right within a reasonable time, and no laches can be imputed to him. Even if it be assumed that there was an equity as between Mr. Brooks and the company, under which Mr. Brooks would not have been entitled to demand his pro rata share in the increase of the stock, it by no means follows that that would apply to Mr. Bird. Numerous cases were cited by counsel for the company, to the effect that a vendee or assignee of an instrument not negotiable, took it as a chose in action, subject to all the equities which might exist as between the original parties thereto. Those were cases, however, relating to mortgages, bonds and in one case to the assignment of a reward for the apprehension of a runaway slave, cases where that which was assigned was entirely lacking in the element of negotiability. In the present case we have to deal with a certificate of stock, a character of property which is for many purposes fully negotiable, and with regard to this a different rule obtains, as was laid down in Knox vs. Eden Musee, 148 N. Y., 454, where it is said, that "the transferee of stock in good faith and for value, holds his title free from latent equities, between prior parties in the line of transmission." Mr. Bird was, therefore, entitled to an opportunity to subscribe to the increased stock, and to have his subscription for his pro rata part of such increase accepted.

The third question involved is, as to the form of the bill, and the power of a court of equity under the present condition of the facts in this case to afford relief. It is a conceded fact that all of the increased stock of the company has been allotted and disposed of by the company, and that the 100 shares to which Mr. Bird was entitled could not now be issued to him by the company without a violation of its charter. The bill therefore prays relief in the alternative form, so that in the event of the inability of the company to issue the stock to Mr. Bird, it shall compensate him in damages. Had the prayer of the bill in this case rested solely in a claim for damages for the non-issuance of the stock, it is clear that a court of equity would have been without jurisdiction; but it is no less true that when the jurisdiction of a court of equity has attached in a case, properly within its powers, that it will retain the case, and proceed with it to a final conclusion, even though in so doing it grants a relief which standing alone would have been beyond its authority. The jurisdiction of this court was properly invoked to enforce the transfer to the plaintiff of the fifty shares of stock purchased by him, as of the date when demand for such transfer was made upon the company, and the court having therefore obtained jurisdiction properly, will maintain it to the end. Numerous cases might be cited in support of the proposition above stated, but it will be sufficient to refer to a single one, because of its close analogy upon every one of the questions involved, in this branch of the case, namely, the case of The Reading Iron Works, 149 Pa. St, 182.

There was some discussion in the argument as to the proper measure of damages in such a case. Whatever may be the rule elsewhere, it is clearly settled in this State by the Baltimore City Passenger Railway Co. vs. Sewell, 35 Md., 238, 258, the rule being, that the plaintiff is entitled to recover the value of the stock at the time of demand, with interest thereon to the time of trial.

In this case the subscription price of the 100 shares to which Mr. Bird was entitled was $75 per share, the date of demand and refusal, January 25th, 1899, the measure of damages therefore is the difference between the sum of $75 per share and the market value of said stock upon the 25th of January, with interest on such difference from that date until a final decree in this case. The evidence does not clearly disclose what the market value of the stock on January 25th was; and before signing a decree an opportunity will be given to the plaintiff to produce evidence showing the market value of the stock upon that day.